## MARTIN *v.* BARBOUR.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF ARKANSAS.

No. 369. Submitted May 1, 1891. — Decided May 25, 1891.

In a proceeding instituted under the statute of Arkansas to confirm a tax title to a lot of land, the person who owned the lot when it was sold for taxes may set up in defence defects and irregularities in the proceedings for the sale.

A lot was sold to the State in 1885, for the taxes of 1884, and, after the two years allowed for redemption had expired, it was certified to the commissioner of state lands, and purchased from him by a person who brought the proceeding to confirm the title. The widowed mother of certain

minors had bought the lot in 1883, in trust for the minors, and had put money into the hands of an agent to pay the taxes of 1884, but he failed to pay them. The lot was listed for the taxes of 1885 and 1886, and they were paid, as if the lot had not been sold. No suit to show irregularities in the sale was brought within two years from its date: *Held*,

(1) The irregularities were not cut off, because the prior owners of the lot were deprived of a substantial right;

(2) The oath prescribed by statute was not taken by the assessor, or endorsed on the assessment books;

(3) There was no record proof of the publication of the notice of the sale for taxes;

(4) The right to redeem was prevented from being exercised within the two years by dereliction of duty on the part of officers of the State;

(5) The purchaser from the State took his deed subject to the equities and defences which existed against the State;

(6) The minors had a right to a decree dismissing the petition to confirm the tax sale, subject to a lien on the lot for the amount of the purchase money on the purchase from the State.

THE case is stated in the opinion.

*Mr. U. M. Rose* and *Mr. G. B. Rose* for appellant.

*Mr. Luther H. Pike* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a proceeding involving the question of the validity of a sale for taxes of lot 5 in block 140, situated in the United States reservation of the Hot Springs, in Garland County, Arkansas. It was commenced by a petition filed July 22, 1887, in the Circuit Court of that county, by R. W. Martin, to confirm his tax title to the lot in question. The petition was brought under certain sections forming part of chapter 23, headed "Confirmation of Titles," of Mansfield's Digest of the Statutes of Arkansas, of 1884, the sections being numbered from 576 to 583, both inclusive, and being set forth in the margin;[1]

---

[1] Section 576. The purchasers, or the heirs and legal representatives of purchasers, of lands at sheriff's sales, those made by the county clerks or by the State land commissioner of this State, in pursuance of any of the laws thereof, or those made by the order, decree or authority of any court of record, may protect themselves from eviction of the lands so purchased, or from any responsibilities as possessors of the same, by pursuing the rules hereinafter prescribed.

Section 577. The purchasers or the heirs and legal representatives of

The petition states that the lot in question, being a town lot in the city of Hot Springs, in the county of Garland, was

---

purchasers, at all sales which have been, or may hereafter be, made may, when such lands are not made redeemable by any of the laws of this State applicable to such sales, or, if redeemable, may, at any time after the expiration of the time allowed for such redemption, publish six weeks in succession, in some newspaper published in this State, a notice calling on all persons who can set up any right to the lands so purchased, in consequence of any informality or any irregularity or illegality connected with such sale, to show cause, at the first circuit court which may be held for the county in which such lands are situated six months after the publication of said notice, why the sale so made should not be confirmed, which notice shall state the authority under which the sale took place, and also contain the same description of the lands purchased as that given in the conveyance to the buyer, and shall further declare the price at which the land was bought and the nature of the title by which it is held.

Section 578. The affidavit of one or more of the publishers or proprietors of said newspaper, setting forth a copy of such notice, with the date of the first publication thereof and number of insertions, sworn to and subscribed before some justice of the peace of the county or city in which said newspaper is published, with a certificate of magistracy from the clerk of the court of said county, under the seal of his office, on being produced to said court, shall be taken and considered as sufficient evidence of the fact of publication, the date and number of insertions, and form of such notice.

Section 579. On producing the proof of said notice, as required in the preceding section, the party publishing the same may apply to the judge of the court aforesaid to confirm said sale; and it shall be the duty of the judge, in case no cause is shown against the prayer of said purchaser, to confirm the sale in question: *Provided, always,* That before he does so confirm it he shall be fully satisfied that said notice is in due form, that it has been regularly published, that the land has been correctly described and the price at which it was purchased truly stated in conformity to the provisions of this act; but in case opposition be made, and it shall appear that the sale has been made contrary to law, it shall be the duty of the judge to annul it.

Section 580. A sheriff's or auditor's deed, given in the usual form, without witnesses, shall be taken and considered by said court as sufficient evidence of the authority under which said sale was made, the description of the land and the price at which it was purchased.

Section 581. The judgment or decree of the court confirming said sale shall operate as a complete bar against any and all persons who may hereafter claim said lands in consequence of informality or illegality in the proceedings; and the title to said land shall be considered as confirmed and complete in the purchaser thereof, his heirs and assigns forever; saving, however, to infants, persons of unsound mind, imprisoned beyond seas or

delinquent for the non-payment of the taxes of the year 1884; that the lot was duly offered for sale by the collector of the county, and was struck off to the State of Arkansas; that the time for the redemption of the lot having expired, it was duly certified to the commissioner of State lands by the county clerk of Garland County, as required by law; that the petitioner applied to the said commissioner to purchase the lot, and, upon the payment to the commissioner of $110.95, received from him, on the 16th of June, 1887, a deed, No. 8867, covering the lot; and that the petitioner paid for the deed the sum of $1, and was the owner of the lot by virtue of such conveyance, and had given the notice required by law, and was entitled to a decree confirming his title. He therefore prayed that his title to the lot be confirmed.

On the 31st of August, 1887, Frances M. Barbour and her three infant children, all under the age of fourteen years, by their next friend, Ormand Barbour, served a notice upon the commissioner of state lands for the State of Arkansas, that the lot in question was the property of the three minors, held in trust for them, at the time of the supposed forfeiture, by their mother, said Frances M. Barbour, who was now the wife of said Ormand Barbour. The notice stated that the minors and the mother applied to be permitted to redeem the lot, by paying the taxes, penalty and costs, and interest, charges and fees, for which they tendered the money. To this notice the commissioner replied, on the 3d of September, 1887, that the land had been sold by the State, and they could not redeem from the State, but must redeem from Martin, and through the courts, if necessary.

On the 10th of September, 1887, the three minors and their

out of the jurisdiction of the United States, the right to appear and contest the title to said land within one year after their disabilities may be removed.

Section 582. When no opposition is made to the confirmation of such sale, the costs attending the proceedings shall be paid by the party praying such confirmation; and where opposition is made the costs shall be borne by the party against whom judgment is rendered.

Section 583. In case any such purchaser shall not deem it necessary to use the remedy conferred by this act to confirm the title thereto, then the said sale shall have the effect given to it by law.

mother filed their answer and cross-bill to the petition of
Martin, setting up that the minors were the children and the
only heirs of Franklin J. Munger, deceased, who died in
December, 1881; that the deed of June 16, 1887, and all the
proceedings on which it was granted, were void as to them, by
reason of the coverture of the mother and the infancy of the
three children; and that they were entitled to redeem the lot
under the tender they had made. The answer and cross-bill
then set forth that the lot in question was patented by the
United States in 1882 to certain parties; that the title became
vested in one Laley, who, in September, 1883, conveyed it, by
a deed of general warranty, to the mother of the minors, who
entered with them into possession under such deed, for a con-
sideration of $11,500, of which $5000 were paid in lawful
money and the balance secured by bond and mortgage, a first-
class boarding-house having been erected on the lot; that at
the date of such deed the mother of the minors was the widow
of said Munger; that the proceeds of a policy of insurance on
the life of said Munger, being $5000, were paid to the mother
of the minors in trust for them, and were paid by her to said
Laley for said lot and boarding-house and the furniture thereof;
that she kept the boarding-house for a while, and then rented it
out, applying the rents to support herself and the minors, who
had resided with her continuously since she purchased the prem-
ises, and were dependent entirely upon her for their main-
tenance and education, with the voluntary assistance of her
husband; that, on renting the house and removing from Hot
Springs, they employed one Wiggs, a real estate agent, who
subsequently absconded from the State, to collect the rents of
the house and pay the taxes, but he failed to apply the rents to
pay the taxes on the land for the year 1884, although he paid
the taxes for that year on the personalty; that Wiggs, who
was then county judge of the county, caused the clerk of the
county court of the county to have the lot listed for taxes for
the years 1885 and 1886, and they were collected, as if the lot
had not been sold to the State for the year 1884; that the
plaintiffs in the cross-bill were thereby kept in ignorance of
the non-payment of the taxes for the year 1884; that at that

time the mother of the minors was the wife of Barbour, having been such prior to the attempted return of the lot as delinquent, and prior to the attempted advertisement and sale of the same for taxes for the year 1884, and at the date of the execution of the deed to Martin by the commissioner of state lands on June 16, 1887, and was still under such coverture; and that she purchased and held the lot as the trustee of the minors.

The cross-bill then avers, that the deed of the lot to Martin conveyed no title to him, in consequence of certain specified defects and irregularities in the proceedings under which the conveyance was attempted to be made, nine of them being specified. The cross-bill further avers that the plaintiffs in it, in June, 1887, immediately after the deed to Martin was made known to him, tendered to him, through their agent at Hot Springs, $111.95, the amount of the taxes, penalty, costs and interest, but the tender was refused by Martin, and they bring into court $125, and tender the same in redemption of the lot, to be paid as the court may direct, and pray that they be decreed to have the right to redeem the lot on payment of such sum as may be lawfully due. On the ground of their disabilities, before stated, and the frauds alleged in the cross-bill, they pray that, upon payment by them of all dues and expenses incurred in respect to the sale and deed to Martin, said deed be declared void and be delivered up to be cancelled, and that their title in the lot be quieted.

Subsequently, and in October, 1887, the plaintiffs in the cross-bill, as citizens of Illinois, Martin being a citizen of Arkansas, removed the suit into the Circuit Court of the United States for the Eastern District of Arkansas. A replication was filed to the answer. An amendment was then filed to the answer and cross-bill; and an amendment also to the petition of Martin, waiving an answer under oath. Martin then put in an answer to the cross-bill, and subsequently the plaintiffs in the cross-bill filed an amendment waiving an answer to it under oath. Proofs were taken, and the case was heard by the court, held by Judge Caldwell, then District Judge, whose opinion is reported in 34 Fed. Rep. 701. On

the 9th of April, 1888, the court entered a decree dismissing the petition of Martin for want of equity, and decreeing that he have a lien upon the lot in question for $110.95, with interest at six per cent per annum from June 16, 1887; and that, unless that sum should be paid within twenty days, the lot should be sold to raise the money to pay that sum. Martin was charged with the costs of the suit, and took an appeal to this court. On the 11th of April, 1888, the appellees paid into court $117.57, the amount of the redemption money with poundage, and the amount, less the poundage, was ordered to remain in the registry and to be paid on demand to Martin.

The lot in question was sold to the State on the 25th of May, 1885, for the taxes of 1884, and at the expiration of two years, the period allowed by law for redemption, by section 5772, it was certified to the commissioner of state lands, and immediately thereafter was purchased by Martin from that officer. The substantial facts set up in the cross-bill are proved by the evidence.

The appellant relies upon section 5782 of Mansfield's Digest, of 1884, which is section 146 of the act of March 31, 1883, (Laws of 1883, p. 273,) and reads as follows: "Section 5782. In all controversies and suits involving title to real property, claimed and held under and by virtue of a deed executed substantially as aforesaid by the clerk of the county court, the party claiming title adverse to that conveyed by such deed shall be required to prove, in order to defeat the said title, either that the said real property was not subject to taxation for the year (or years) named in the deed, or that the taxes had been paid before the sale, that the property had been redeemed from the sale according to the provisions of this act, and that such redemption was had or made for the use and benefit of persons having the right of redemption, under the laws of this State; or that there had been an entire omission to list or assess the property, or to levy the taxes, or to give notice of the sale, or to sell the property. But no person shall be permitted to question the title acquired by a deed of the clerk of the county court, without first showing that he, or the person under whom he claims title to the

property, had title thereto at the time of the sale, or that title was obtained from the United States or this State after the sale, and that all taxes due upon the property have been paid by such person, or the person under whom he claims title as aforesaid: *Provided*, That in any case where a person had paid his taxes, and, through mistake (or otherwise) by the collector, the land upon which the taxes were paid was afterward sold, the deed of the clerk of the county court shall not cónvey the title: *Provided, further*, That in all cases where the owner of lands sold for taxes shall resist the validity of such tax title, such owner may prove fraud committed by the officer selling said lands or in the purchaser, to defeat the same, and, if fraud is so established, such sale and title shall be void." But that section relates exclusively to deeds made "by the clerk of the county court," and does not embrace deeds made by the commissioner of state lands.

The appellant also relies upon section 4246 of Mansfield's Digest, of 1884, which reads as follows: "All deeds issued by said commissioner (of state lands) . . . shall be under his hand and official seal, and shall convey to the purchaser, his heirs and assigns, all the right, title and interest of the State to said lands and town lots, and such deeds shall be received as evidence in any court in the State." But, in *Scott* v. *Mills,* 49 Arkansas, 266, it was held that the effect of that section was to make the deed *prima facie* evidence of title in the purchaser, and to relieve the grantee and those holding under him from making proof, until evidence was introduced showing or tending to show that the deed conveyed no title. The deed does not prevent the plaintiffs in the present cross-bill from showing that they have been deprived of substantial rights by reason of the failure of the officers of the State to observe requirements of the law in respect to listing or assessing the property for taxation, or selling it as delinquent, or in respect to the redemption of it after its sale. In the present case, the plaintiffs in the cross-bill proved such failure to the satisfaction of the Circuit Court.

By section 577 of Mansfield's Digest, of 1884, before referred to, the purchaser is required to publish a notice " calling on

all persons who can set up any right to the lands so purchased, in consequence of any informality or any irregularity or illegality connected with such sale," to show cause why the sale should not be confirmed.

By section 579, it is provided, that, "in case opposition be made, and it shall appear that the sale has been made contrary to law, it shall be the duty of the judge to annul it."

By section 581, it is provided, that the judgment of the court confirming the sale shall operate as a complete bar against any and all persons who may "claim said land in consequence of informality or illegality in the proceedings; and the title to said land shall be considered as confirmed and complete in the purchaser thereof, his heirs and assigns forever; saving, however, to infants, persons of unsound mind, imprisoned beyond seas or out of the jurisdiction of the United States, the right to appear and contest the title to said land within one year after their disabilities may be removed."

Section 5791 of Mansfield's Digest, of 1884, reads as follows: "All actions to test the validity of any proceeding in the appraisement, assessment or levying of taxes upon any land or lot, or part thereof, and all proceedings whereby is sought to be shown any irregularity of any officer, or defect or neglect thereof, having any duty to perform, under the provisions of this act, in the assessment, appraisement, levying of taxes or in the sale of lands or lots delinquent for taxes, or proceedings whereby it is sought to avoid any sale under the provisions of this act, or [for] irregularity or neglect of any kind by any officer having any duty or thing to perform under the provisions of this act, shall be commenced within two years from the date of sale, and not afterward." The provisions of this section, as section 138 of the act of April 8, 1869, were considered by the Supreme Court of Arkansas in *Radcliffe* v. *Scruggs*, 46 Arkansas, 96, 107, where it was said that the statute did not operate to deprive the former owner of any "meritorious defence," meaning thereby "any act or omission of the revenue officers in violation of law and prejudicial to his rights and interests, as well as those jurisdic-

tional and fundamental defects which affect the power to levy
the tax, or to sell for its non-payment." The court further
said: "We have no doubt of the power of the legislature to
cure any irregularity or illegality in a tax sale, which consists
in a mere failure to observe some requirement imposed, not
by the constitution, but by the legislature itself, and the non-
observance of which does not deprive the former owner of
any substantial right. . . . All technical objections to the
sale, not actually prejudicial to the former owner, must be
brought forward within two years, under penalty of not being
afterwards regarded when the tax title is assailed."

In the present case, it is contended by the appellant that
the irregularities alleged by the appellees were cut off under
section 5791, because they commenced no suit within two
years from the date of the sale. But those irregularities
deprived the appellees of a substantial right, and were not
technical objections to the sale, and were actually prejudicial
to the appellees.

It was proved that the sale was made contrary to law,
because no valid assessment for the year 1884 was made, in
that the assessor did not take and subscribe the oath or affir-
mation prescribed by section 5661 of Mansfield's Digest, of
1884, which provides as follows: "Every assessor shall, on or
before the first day of January succeeding his election, and
before entering upon or discharging any of the duties of his
office, take and subscribe to the oath prescribed in section
twenty, article nineteen, of the constitution of Arkansas, and,
in addition thereto, the following oath or affirmation, which
oath shall be endorsed upon the assessment books prior to
their delivery to the assessor: 'I, ———, assessor for ———
county, do solemnly swear that the value of all real and per-
sonal property, moneys, credits, investments in bonds, stocks,
joint stock companies, of which statements may be made to
me by persons required by law, will be appraised at its actual
cash value; that in no case will I, knowingly, omit to demand
of any person or corporation, of whom by law I may be re-
quired to make such demand, a statement of the description
and value of personal property, or the amount of moneys and

credits, investments in bonds, stock, joint stock companies or otherwise, which he may be required to list, or in any way connive at any violation or evasion of any of the requirements of the law or laws in relation to the listing or valuation of property, credits, investments in bonds, stocks, joint stock companies or otherwise, of any kind, for taxation.' "

It was also shown that such oath was not endorsed upon the assessment books for the year 1884, prior to their delivery to the assessor, as provided by section 5661.

It is also provided by section 5662 as follows: " If any person so elected fails or refuses to take the oath required in the preceding section, and file the same with the clerk of the county court of his county, within the time prescribed, the office shall be declared vacant, and the clerk of the county court shall immediately notify the governor, and such vacancy shall be filled in accordance with the constitution and laws of the State." See *Parker* v. *Overman*, 18 How. 137; *Moore* v. *Turner*, 43 Arkansas, 243.

Where the statute provides for the publication of a notice of sale for taxes, and prescribes the terms of such publication, it must be strictly pursued. Cooley on Taxation, 2d ed. p. 484. In the present case, there was a failure to prove the publication required by the statute. An attempt was made to do so by means of *ex parte* affidavits, presented more than two years after the sale was made. But the statute required record proof, and nothing could be substituted for that, nor could a failure to give it be excused.

By section 5763 of Mansfield's Digest, the form is prescribed of the notice which is to be attached to the list of delinquent lands, which, by section 5762, is required to be published in a newspaper; and section 5763 goes on to provide as follows: " The clerk of the county court shall record said (delinquent) list and notice (of publication attached to it) in a book, to be by him kept for the purpose, and shall certify at the foot of said record, stating in what newspaper said list was published, and the date of publication, and for what length of time the same was published before the second Monday in April then next ensuing, and such record, so certified, shall be evidence

of the facts in said list and certificate contained." In the present case, no such record was made. The provision is a peremptory one, and it cannot be dispensed with, without invalidating the proceeding.

By section 5705, the clerk of the county court was required, on or before the first Monday in November in each year, to make out and deliver the tax books of the county to the collector, with his warrant thereunto attached, under his hand and the seal of his office, authorizing the collector to collect the taxes.

By section 5731, the collector was required to give notice, by the posting of printed notices, of his attendance at certain places to receive the taxes, and to attend by himself or his deputy for that purpose at the time and place named in the notice, and thereafter to attend at his office at the county seat, until the 10th of February of each year, to receive taxes from persons wishing to pay them.

By section 5760, the collector was required, by the first Monday of March in each year, to file with the clerk of the county court a list or lists of all such taxes levied on real estate as he had been unable to collect, therein describing the land or town or city lots on which the delinquent taxes were charged, as the same were described on the tax-book, and to attach thereto his affidavit to the correctness of the list; and he was required also to scrutinize the list and compare it with the tax-book and record of tax receipts, and strike from the list any land or lot upon which the taxes had been paid, or which did not appear to have been entered on the tax-book, or which should appear from the tax-book to be exempt from taxation.

By section 5762, he was required to cause the list of the delinquent lands in his county, as corrected by him, to be published weekly for two weeks between the first Monday in March and the second Monday in April in each year, in a newspaper.

Then followed the provision before stated of section 5763. The sale in the present case was made May 25, 1885.

By section 5769, the clerk of the county court was required

to attend the sale and to make a record of it in a substantial book, and to record in a separate book, to be kept for that purpose, each tract of land or lot sold to the State, together with the taxes, penalty and cost due thereon; and by section 5771, he was required immediately after the sale to transfer upon the tax-books all lands sold for taxes to the name of the purchaser.

It is quite clear that the clerk did not comply with these requirements, especially with those of sections 5763 and 5769. Because he so failed in his duty in respect to the tax-sale of 1884, the assessor returned the lot in question on the assessment for 1885 as subject to taxation, instead of returning it as exempt from taxation by reason of its having been struck off to the State at the tax-sale for the delinquent tax of 1884, which would have prevented the county clerk from placing the lot on the tax-books for 1885, which he was required by section 5705 to make out and deliver to the collector on or before the first Monday of November, 1885. If the requirements of the law had been followed, the plaintiffs in the cross-bill, when attending by their agent to pay the taxes for 1885, would have been informed that there were no taxes for them to pay, because the lot stood in the name of the State. In such case, it being shown that they intended to pay the tax for 1884 and made full provision for that purpose, it is manifest they could and would have redeemed the lot.

To permit the sale to the appellant to be confirmed would be to assist the State to take advantage of its own wrong. The right to redeem is a substantial right, and was prevented from being exercised within the statutory period of two years by the dereliction of duty on the part of the officers of the State. The sale was made contrary to law, and it was the duty of the Circuit Court, under the statute, to annul it, in order to allow the redemption to take place. No more manifest case for the interposition of a court of equity can be imagined. The State is bound by the acts of her officers in placing the lot on the tax-books for the years 1885 and 1886, and receiving from the appellees the taxes for those years. Equity will treat the transaction as a waiver of the prior sup-

posed forfeiture, and will regard the tax paid for 1885 and 1886 as so much paid toward redemption, and will permit the payment of the rest. The appellant took his deed for the land in the same condition in which the State held it, and subject to the same equities and defences. The State having created its bureau of taxes, is bound to see to it that its officers impart correct information to parties dealing with it and do not mislead them.

The mother of the minors had the right to acknowledge, as she did, her trusteeship for them. The minors are the real parties in interest in the case, and they have appeared and contested the title to the lot, within the right reserved to them by section 581. They are entitled to the relief given to them by the Circuit Court, although section 5772 does not give the right to redeem to married women; for it gives that right to minors within two years after the expiration of their disability.

The case is so thoroughly discussed, and the rights of the appellees to relief so fully vindicated, in the opinion of the Circuit Court, that we do not deem it necessary to add anything further.

*Decree affirmed.*