Statement of the Case.
NICHOLLS, J.
The petition in this case was filed on April 7, 1902. In it plaintiff alleged: That Joseph A. Schenck, on or about the -;— days of August, September, October, November, and December, 1901, at various dates within a year prior to this suit, and in the present year, unlawfully trespassed upon the land of petitioner and cut thereon the standing timber, forestry timber, and removed and hauled and shipped away the said timber from petitioner’s property, and continued unlawfully to trespass upon and commit damage upon the said land and property of petitioner. That he is the owner and in possession of a certain tract of land in the parish of Livingston in this state, known as section 15, in township 7 south, range 5 east. That he is the true and bona fide and lawful owner of the said land under absolute and regular title and possession from previous owners and vendors, and has been the owner and in possession for more than 10 years, to wit, since the 25th day of July, 1890, and has at all times paid the taxes on the said land, and the said land has increased in value during petitioner’s ownership. That on the 20th day of August, 1901, the defendant, Joseph A. Schenck, pretended to purchase the west half of said section 15 from R. A. Cor-bin, who claimed to have a tax title from the state of Louisiana, under an alleged forfeiture of adjudication of 24th day of April, 1888, of the said west half of the said section of land to the state on an assessment in the name of Charles G. Morales. That the defendant, under cover of the said pretended sale or transfer from Corbin, thereupon unlawfully trespassed upon petitioner’s land, cut thereon the standing timber, forestry timber, and hauled and shipped away the said timber, being mostly pine timber, from the said land. That the said west half of said section 15, in township 7 south, range 5 east, exceeds in value the sum of $2,100. That the said land was never the property of the said Charles G. Morales, the assessment in whose name was a dual assessment of the said land, and an absolute nullity, and could not be cured by prescription, and the defendant was well aware the said assessment and adjudication was an absolute nullity, and that the land was the property of petitioner, and no steps had ever been taken to dispossess petitioner, in whose name the taxes continued to be assessed and paid. •
That the said assessment in the name of Charles G. Morales was a dual assessment, made without cause therefor or foundation in fact or law, and as the said Morales never claimed or owned or had been in possession of the said lands, but of other lands, the said adjudication and forfeiture was an absolute nullity, and conveyed no title to the *208 state of Louisiana, or divestiture of title or i ownership of petitioner or the authors of his title, and the said pretended purchase by Oorbin from the state was not translative of property and conveyed no title to petitioner’s property; the description in the assessment being also radically false and without demand or notice of seizure, or compliance with essential formalities of law or terms of sale.
That there had never been legal forfeiture of the said land for state taxes. That there had never been any title to said lands by tax sale, or otherwise than the regular title and possession of petitioner and his vendors, the authors of his title, and the said sale of the said property to Corbin and by the said Cor-bin to the said defendant, Schenck, were sales of the property of another, and were absolute nullities, and have led to petitioner’s grieyous wrong and injury and serious damage to his property.
That said Joseph A. Schenck had gone on the said land without notice to petitioner, and illegally and tortiously cut and destroyed forestry timber, which had been preserved for years by petitioner. Petitioner showed that he would not have cut or sold the said timber separate from the land, and had a gratification in possessing it, and would not have sold or cut the said timber, except subject to the rules or system obtaining in forestry preservation, and was entitled to the legal enjoyment and ownership of the said property without disturbance.
That the value of the said timber was a marketable product at the point to which shipped for sale by the said party cutting the same, largely exceeding $1,200, and that petitioner had suffered loss and injury in the said amount, and further damages in the unlawful trespass upon and actual injury to and destruction of ownership of the said property as it stood before the said unlawful invasion and cutting, in a sum exceeding $300.
Petitioner averred amicable demand upon the defendant for settlement of the said injuries without avail; that petitioner reserved all right to sue the said R. A. Corbin in solido for the said damages, who resided in the parish of Tangipahoa.
In view of the premises, petitioner prayed that the said Joseph A. Schenck be cited to appear and answer this petition, and, after due proceedings, there be judgment in petitioner’s favor and against the said defendant, Joseph A. Schenck, annulling and setting aside and canceling the alleged adjudication to the state of Louisiana of the said west half of the said section of land in the name of Charles G. Morales, and the subsequent purchase and transfer under the said adjudication by the said Corbin, and the said transfer or sale by the said Corbin to the said defendant, Joseph A. Schenck, and that petitioner be quieted in his full possession and ownership and enjoyment of the said property, and have judgment against the said Joseph A. Schenck in the sum of $1,500 as aforesaid, reserving all rights to sue the said Corbin, who is a resident of the parish of Tangipahoa, in solido for the said damages or injury to the said property for any further cutting of the said timber by said defendant from the time of the institution of this suit, and for costs and all general relief.
Joseph A. Schenck answered, pleading first a general denial. He specially denied that he was in possession. or trespassed in any way upon the property claimed by plaintiff, or that he ever claimed to own the same. On the 13th of November, 1902, plaintiff filed a supplemental petition, in which he averred that through error Joseph A. Schenck, the father of the defendant, had been cited to appear and answer the petition. He prayed that said error be corrected, that Joseph A. Schenck be cited to appear and answer, and that there be judgment against him as prayed for in the original petition. Upon a supplemental petition filed by plain *209 tiff, the property and certain logs were sequestered by the sheriff. The logs were by defendant released on bond.
On the 15th of April, 1903, defendant answered. After pleading the general issue he averred that he was the owner of the property described in plaintiff’s petition, having acquired same in good faith from R. A. Oorbin by public act before R. Lillie, notary public, August 20, 1901, which act was duly recorded in Conveyance Book No. 11, pp. 342, 343, of the parish of Livingston, and that from the date of his purchase be had been in the peaceful and undisturbed possession thereof until sued herein. He averred that R. A. Corbin acquired said property from the state of Louisiana by title from O. B. Steele, Auditor, in December, 1890, said title of Corbin being recorded in the conveyance records of said parish in Book No. 6, p. 587, and the state of Louisiana acquired same from C. G. Morales by forfeiture for the nonpayment of the taxes for 1885, in April, 1886; said title to said state being made by George Felder, sheriff and tax collector, and same recorded in the conveyance records of said parish in Book No. 4, pp. 402, 403. That said sales were all legal and the law observed in making same.
This defendant now specially pleaded 3, 5, and 10 years as a prescriptive bar against plaintiff’s right of action. He showed, further. that R. A. Corbin, who resided in Tangipahoa parish, and who sold his said land, was bound to warrant and defend his title, and he desired him called in warranty.
In view of the premises, he prayed for the rejection of plaintiffs’ demand at his cost, and that he be decreed owner of the land sued for, and quieted in the possession. He further prayed for the citation of R. A. Cor-bin to appear and defend his title and stand in warranty; but, should judgment be rendered in favor of plaintiff against him, then he prayed for like judgment against R. A. Corbin. He prayed for all necessary orders and general relief.
The warrantor answered, adopting all the defenses set up in the defendant’s answer. He specially denied that plaintiff was the owner of the land described in his petition, denied that plaintiff ever purchased same, denied that the authors of plaintiff were ever the owners of said land, denied that the said property was. doubly assessed, and denied that the taxes for the year 1885 assessed against said property were ever paid by any one for said year. He showed that said property was adjudicated to the state of Louisiana in April, 1886, by the tax collector of Livingston parish, for the unpaid taxes for the year 1S85 by George Felder, then sheriff; that subsequently, on the 30th of December, 1890, the State Auditor, under authority of Act No. 80, p. 88, of 1888, sold the said land to warrantor, which said deed from the Auditor was duly recorded in Book of Conveyances No. 6, p; 587, of said parish.
Warrantor says that, since the day of his purchase from the state, he and his vendee, J. Schenek, had been in the peaceable and undisturbed possession of said land until the filing of this suit.
He specially denied that the plaintiff or any of his authors were ever in the actual possession, civil or constructive, of the property in dispute.
He specially pleaded the lapse of 3 years since the adoption of the Constitution of 1898, as provided by article 233 thereof, as a bar to the right of plaintiff to institute and prosecute this suit. He showed that more than 3 years had elapsed since the adoption of the Constitution of 1898 before the institution of this suit. He pleaded the prescription of 3, 5, and 10 years against plaintiff’s demands and right of action.
That plaintiff’s demand against Joseph Sehenck be rejected and disallowed, and his suit dismissed, and for all costs, and for general relief.
The district court rendered judgment rejecting plaintiff’s demand, and he appealed.
*210 Opinion.
On the 25th of July, 1890, by act passed before Joseph J. Wolfe, a notary public for the parish of Orleans, which act was recorded on the 12th of August, 1890, the plaintiff bought from the heirs of Miles Judson and wife a large body of land, in which was included the whole of section 15, township 7 south, range 5 east, in Livingston parish. The west one-half of the section was declared in the act to have been patented to A. D. Montross by patent No. 4,592, sold to Judson.
About the time of plaintiff’s purchase, he and his brother, J. C. Gilmore, went over this section and then returned to New Orleans; plaintiff leaving one William Gayle in charge, with permission to fence in some of the same as his pasture and to use the wood and rails, etc., which he needed. Gayle fenced in a portion of ground on the east half of section 15; his own residence being beyond, but near the eastern part of the section line. He has continued in charge of the property ever since.
On the 6th of October, 1890, the plaintiff paid the State Tax Collector the taxes on section 15 for the years 1887, 1888, 1889, and 1890, and continued to do so up to the time of the institution of this suit. From and after 1890 the property was assessed to the plaintiff; the first assessment declaring that it was assessed to Gilmore as holding under Judson’s entry. In the deed from the Judsons to the plaintiff it was declared by the vendors that all taxes • had been paid, but the purchaser bound himself to pay any that might- not have been paid.
We find in the record, as recorded in the parish of Livingston, on the 11th of July, 1886, a deed executed on the 24th of April, 1888, by George Felder, sheriff and ex officio tax collector of that parish, in which he declared that he adjudicated to the state of Louisiana the west half of section 15, township 7 south, range 5 east, assessed in the name of Charles G. Morales for 1885; the amount due the state at the time of the adjudication being declared to amount in the aggregate to the sum of $6.60. The tax collector recited in the deed that in so doing he was acting under and by virtue of section 3 of Act No. 107 of 1884. In the body of the act the-tax collector recites that, acting by virtue of the authority of and in pursuance of the requirements of Act No. 96 of 1882, and sections 3 and 4 of Act No. 107 of 1884, after publishing, mailing, and delivering the notices required by sections 50 and 51 of Act No. 96 of 1882, and complying strictly with each and every requirement of that act, he did, in the manner required by said sections of said act, advertise to be sold for state taxes, district levee taxes, and parish taxes, on the 17th of April, 1888; that in the list as advertised appeared the names of the following persons (mentioning them and among them that of Charles G. Morales), which was not sold after offering it at public auction at the time and place fixed, and there being no purchasers to said property, after complying with the requirements of the law, and having offered said property in the manner required by section 3 of Act No. 107 of 1884, the said property remained unsold, wherefore, as before stated, he adjudicated the same to the state.
In the record it appears as recorded in Livingston parish in Book No. 6 of Conveyances, but without date as to the time of recording, though some time prior to the 11th of November, 1892, a deed executed on the 3d day of December, 1890, by O. B. Steele, Auditor of the State, in which it is declared that he sold, assigned, and delivered to R. A. Corbin 236 acres of land, being W. Va of section 15, township 7, range 5 east, adjudicated to the state in the name of Charles G. Morales for the taxes of 1885. The act recited that the Auditor was acting in pursuance of section 3 of Act No. 80 of 1888; that the property was adjudicated to *211 the state on April 17, 1886, by George Felder, tax collector, for unpaid taxes due the state, and had been once advertised and offered for sale by George Felder, tax collect- or, in compliance with the provisions of Act No. 80 of 1888, and failed to sell; that he (the Auditor) had received bids for said property, as would appear by reference to an application and bid made by R. A. Corbin on the 14th of October, 1890, dated at Spring-ville, La.; and that this sale was so made to him for cash in current money and for the price and sum of $32.24, the receipt of which was acknowledged as follows: Amount of adjudication to the state, including state tax for the year 1885, $4.60; 20 per cent, thereon, 92 cents; amount of taxes due the state for the years 1886 to 1890, inclusive, $6; surplus, $5.72 — total, $17.24. All parish taxes for the year 1885 and all subsequent years to date and costs of enforcing Act 80 of 1888, having been paid to the tax collector, as evidenced by his certificate, dated December 1, 1890, of record in the Auditor’s office, amounting to $15. The certificate of the tax collector so referred to is not in the record, and therefore we have no knowledge of its recitals. We find in the record no act evidencing an adjudication of this property to the state prior to that just hereinbefore set out, which was executed on the 24th of April, 1886, by reason of the failure to obtain a purchaser at the sale attempted to be made on the 17th of April; nor is’ there any act evidencing any attempt made by the tax collector to sell that property at public auction subsequently to the adjudication of the 24th of April. Neither Schenck nor Cor-bin allude to a second offering in their pleading.
In the record appears as having been recorded in Livingston parish, on August 31, 1901, a copy of an act before R. Willie, notary public for the parish of Tangipahoa, executed by R. A. Corbin, on the 29th day of August, 1901, in which he sold to Joseph Schenck under warranty the west half of said section 15. The parties dispensed with a certificate of mortgages from the recorder and declared that all taxes against the property had been paid, but do not say by whom. Almost as soon as this sale was executed, Schenck commenced cutting down and hauling away timber from the land, and at some time not shown made an inelosure on the land in which he kept his working oxen. Precisely where that inclosure was, or what its extent was, is not disclosed.
The defendant argues this case from the standpoint of his being in possession of the land, and plaintiff’s action as being a petitory action brought against him; but that position is not maintainable. Plaintiff alleges that he himself is in possession of the property, and that he had been so continuously since his purchase, and he does not deal with the defendant as a party in possession and with the legal rights which a possessor would have. So far from this, he designates him as a “trespasser,” and proceeds against him distinctly, as one who had illegally gone on the property from time to time and cut timber therefrom, for which he claims damages. A party who charges another with being a “trespasser” takes from him ex vi terminorum, so far as his pleadings are concerned, the status of a “possessor.” We do not think it necessary to give to this action any precise 'designation. All that the occasion calls for is, after the evidence is all in, to apply to the situation the legal rules applicable to it. This court in Wilbert v. Michel, 42 La. Ann. 856, 8 South. 607 (a case resembling this in many respects), declared that it was not a petitory action. The latter action is brought by one admittedly out of possession, claiming ownership against another admittedly in possession. Plaintiff’s action is one possessory in character. His allegations of ownership were made incidentally to characterize his alleged possession, and entitle him by reason thereof to the con *212 structive possession of the entire tract in controversy, should he have established possession of a part under a title.
If plaintiff's action was possessory in character, defendant was powerless simply by his own pleadings to alter its character. We think in this ease he met plaintiff’s claim by a counterclaim of like character — that he was himself in possession under a title,-and that by reason thereof his possession of a part gave him constructive possession of the Whole tract.
We think that plaintiff has shown that, shortly after he bought this property, he took actual possession of a part of the same through an inclosure made by Gayle with his consent, and that this possession continued up to the institution of this suit. Defendant concedes that under article 3437 of the Revised Civil Code it is not necessary that a person wishing to take possession of an estate should pass over every part of it, and that it is sufficient if he enter on and occupies a part of the land, provided it be with the intention of possessing all included within the boundaries; but he maintains that the rule does not apply in this case, for the reason that the plaintiff, through his act of purchase, bought both the east half and the west half of section 15, his vendors acquiring each half of the same by different titles. The question of the titles under which plaintiff’s vendors may have acquired their property does not enter as an element or factor in the matter of the possession of the plaintiff, their vendee. So far as the latter is concerned, and so far as his own possession is concerned, the origin of plaintiff’s title dropped out of consideration. If the purchaser bought the property as an entirety, physically connected, his possession of a part carried with it constructive possession of the whole. The plaintiff’s title and possession thereunder under title of owner being shown to have preceded any title or possession which the defendant or his author has established, we are of the opinion that the rights of the parties to this litigation must be tested from the standpoint of plaintiff’s being in possession of the property under a title which must be held good until destroyed by the strength of a superior title. The defendant asserts that he has shown that he, under a claim of ownership also, took possession of this property by reason of the inclosure of part of the same, and that that fact gave him likewise a constructive possession of the whole; but it is manifestly impossible that there should be two constructive possessions at one and the same time of the same property. The person first holding constructive possession of a particular property under a title maintains it as against later alleged constructive possession of the same property by another person. The possession of the latter is limited to the precise property of which he has actual possession. Under the condition of things disclosed by this record there is no room for the application of the prescription of three years invoked by the defendant.
Plaintiff having shown himself to have been in possession of this property for over ten years under a title of ownership, a'nd the defendants having been shown to have gone upon the property and cut down and carried off a large quantity of timber from the land, it is upon him under such circumstances to justify his course in having done so, and in placing the act from Corbin to himself on the records. We do not think he has met the burden imposed upon him by the situation. We are of the opinion that, when he took title from Corbin, he was aware of plaintiff’s outstanding title, and that his action in going upon the property and cutting the timber therefrom was in bad faith. His acts in this respect were not continuous, but at intervals, as was also his “occupancy” (not possession) of the small inclosure which he used for his oxen. If it be true that he was not advised of plaintiff’s *213 rights at the very moment that he purchased from Corbin, he was brought to a knowledge of it very soon afterwards, and, so far as liability for the timber cut, he became responsible from the moment he came to such knowledge. Corbin had had no prior possession of the property and conveyed none to him. The tax collector, in receiving payment for' taxes on the land from Gilmore on the 6th day of October, 1890, recognized that the state had taken nothing by the adjudication made to it in April, 1886, in an assessment in the name of Morales, admitted Gilmore’s possession of the property at that time and his liability for the taxes, and by receiving them from him ever since has admitted his continuous possession and liability for the taxes up to the filing of this suit. Pitre v. Schlesinger, 110 La. 236, 34 South. 425. The tax collector, after receiving payment in full from Gilmore on the 6th of October, 1890, of all the taxes which he claimed to be due upon the property at that time, was without authority and powerless to receive payment of the same taxes a second time from Corbin on December 1, 1890. Townsend v. Edwards (Fla.) 6 South. 213; Moon v. March (Kan.) 19 Pac. 335; Kellogg v. McFatter, 111 La. 1047, 36 South. 112; Wilbert v. Michel, 42 La. Ann. 856, 8 South. 607; McWilliams v. Michel, 43 La. Ann. 990, 10 South. 11; Brown v. Land Co., 48 La. Ann. 1188, 20 South. 711; Lefebre v. Negrotto, 44 La. Ann. 792, 11 South. 91.
After receiving and placing in the treasury the amount of taxes paid by Gilmore, the state was estopped from subsequently selling the same property for the same taxes to another person. Corbin acquired no title by his deed from the Auditor, and conveyed none to Schenck. Ill La. 1047, 36 South. 112.
' In Martin v. Barbour, 140 U. S. 646, 11 Sup. Ct. 949, 35 L. Ed. 546, it is said: “To permit the sale to be confirmed would be to assist the state to take advantage of its own wrong. The state is bound by the acts of her officers in placing the lot on the tax books for the years 1885 and 1886, and receiving from the appellees the taxes of those years. Equity will treat the transactions of a waiver of the supposed forfeiture, and will regard the taxes for 1885 and 1886 as so much paid towards redemptions, and will permit the payment of the rest. The appellant took his deed for the land in the same condition on which the state held it and subject to the same equities and defenses. The state having created its bureau of taxes, is bound to see to it that its officers impart correct information to parties dealing with it and do not mislead them.”
The state is just as much estopped by her acts as any individual, and she is bound by the acts of her officers acting as tax collectors.
Counsel refer the court to Pepper v. Dunlap, 9 La. Ann. 141; Graham v. Tignor, 23 La. Ann. 570; Routh v. Citizens’ Bank, 28 La. Ann. 462; Succession of Zacharie, 30 La. Ann. 1262; Dikinson v. Bank, 31 La. Ann. 256-470; State v. Ober, 34 La. Ann. 359; Gaudet v. Gauthreaux, 40 La. Ann. 186, 3 South. 645; Breaux v. Negrotto, 43 La. Ann. 435, 9 South. 502; Raymond v. Palmer, 47 La. Ann. 791, 17 South. 312; State v. Railroad Co., 104 La. 693, 29 South. 312; Pitre v. Schleslinger, 110 La. 236, 34 South. 425; Davis v. Gray, 16 Wall. 232, 21 L. Ed. 447; Curran v. State, 15 How. 308, 14 L. Ed. 705; Colorado Coal & Iron Co. v. United States, 123 U. S. 312, 8 Sup. Ct. 131, 31 L. Ed. 182.
This case is absolutely without equity. The plaintiff has been in possession of this property as owner since 1890, and has been continuously borne upon the assessment rolls since that date, and has paid all the taxes thereupon, while the defendant’s name appeared on the rolls for the first time (and then as a dual assessment) in 1898. It appeared again as a dual assessment in 1899, 1900, and 1901. Schenck paid the taxes on the west one-half of section 15 for 1901 and *214 1902, but so also did tbe plaintiff. . There are no tax receipts whatever of the tax collector of taxes as having been paid by Cor-bin. The west one-half of section 15 was assessed in the name of Charles G. Morales in 18S5, 1886, and 18S7, but in the assessment of 1887 the property is described as “property forfeited to the state”; the “forfeiture” referred to being doubtless the adjudication made to the state in April, 1886.
We are of the opinion that the judgment appealed from is erroneous, and that the plaintiff is entitled to a judgment. The defendant admits to having cut down timber to the value of $2,000. Plaintiff claims in his brief $1,500. We think that plaintiff is entitled to receive that amount. The defendant is entitled to a judgment against his warrantor, Corbin.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be and the same is hereby annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of the plaintiff, William Y. Gilmore, against the defendant, Joseph Schenck, quieting the said plaintiff in the possession of the west half of section 15 in township 7 south, range 5 east; and it is further ordered, adjudged, and decreed that the said plaintiff recover from the said defendant the sum of $1,500 for having-trespassed upon the said land and cut down a large number of trees thereon, and hauled away and sold the same.
It is further ordered, adjudged, and decreed that the title set up by the said defendant in defense of his action in the premises, to wit, an act of sale to R. A. Oorbin of the said property on the 30t3i day of December, 1890, by O. B. Steele, Auditor of the state of Louisiana, and the sale of the same property by R. A. Corbin to the defendant, Joseph Schenck, on the 29th day of August, 1901, before Willie, notary public for the parish of Tangipahoa, be, and the same are, hereby decreed to be null, void, and of no effect; and that the registry of the same were and are a cloud upon the plaintiff’s title to said property. Defendant is decreed to pay the costs of both courts. It is further ordered, adjudged, and decreed that the defendant, Joseph Schenck, do have judgment against his warrantor, R. A. Corbin, for $500, the price of the said property sold to him by said Corbin, with costs in both courts.
MONROE and PROVOSTY, JJ.. concur in the decree.