LAND, J.
This is a petitory action to recover two small tracts of land brought by the plaintiffs, as the heirs of their deceased parents, Clet Gauthreaux and Celina Laundry. It appears that the mother, who owned one of the tracts, died in 1879. The father died in the year 1902.
In 1890, Clet Gauthreaux paid the taxes for 1889 on both tracts which were assessed to him. The taxes for 1890 were not paid, and the property was adjudicated to the state on August 10, 1891. The lands continued to be assessed to Gauthreaux for the years from 1891 to 1901 inclusive, and he regularly paid the taxes thereon to the state, parish, and levee board, from year to year. Gauthreaux remained in actual possession of the property until his death. During the year 1902, Gauthreaux and his heirs held possession through a tenant.
The defendant claims title under the tax adjudication of 1891 by the following chain of conveyances, to wit: State to Atchafalaya levee board, June, 1895, recorded November, 1806; levee board to South Louisiana Land *874 Company, October, 1902; land company to A. IQotz; and Klotz to Eno Theriot, January 7, 1903. It seems that early in 1903 the tenant on the place agreed to attorn to the defendant.
The defendant pleaded the prescription of three years under article 233 of the Constitution of 1898, and set up the title acquired by him under the tax adjudication.
There was judgment in the district court in favor of the defendant. This judgment was reversed by the Court of Appeal, which rendered judgment in favor of the plaintiffs. The case is before us on a writ of review.
The Court of Appeal, after citing Pitre v. Schleslinger, 110 La. 236, 34 South. 425, Booksh v. Wilbert, 115 La. 357, 39 South. 9, and Gilmore v. Schenck, 115 La. 397, 39 South. 40, said:
“Applying these principles to the case at bar, we conclude that as the property was regularly assessed to plaintiffs’ father, the tax debtor, and the collector received taxes from him for the years 1891, 1892, 1893, 1894, and 1895, that the state had taken nothing by the adjudication made to it in 1891, and, when the auditor made title to the levee board, the state had no title to give, and is forever estopped from controverting plaintiffs’ title, and that the defendant and his vendors occupy no better position than the state.”
In Pitre v. Schleslinger, 110 La. 234, 34 South. 425, the plaintiff having acquired certain lands from the state, which the state in turn had acquired at tax sale, brought suit, under article 233 of the Constitution of 1898, to quiet his tax title. The defendant attacked the tax sale on the ground of want of notice. This defense was sustained. The plea of the constitutional prescription of three years was overruled on the ground that plaintiffs’ title was only one month old, and that he could not avail himself of prescription while the title was in the state, because the state was estopped from invoking prescription. The court said:
“After the tax sale, the state, through its officers, continued to assess the property to the former owners, and to collect taxes from them on the property. This estopped the state from availing herself of prescription against the former owners. Delay could not run in favor of the state while she was by those acts of her officers acknowledging the title of these former owners of the property. Martin v. Barbour, 140 U. S. 634, 11 Sup. Ct. 944, 35 L. Ed. 546. The former owners continued to claim ownership and possession of the property, and the tax collector, by collecting taxes from them, admitted their claims.”
In Booksh v. Wilbert, 115 La. 351, 39 South. 9, the plaintiff, claiming ownership and possession of a certain tract of land supposed to be entirely situated in the parish of Iberville, brought suit for slander of title. The defendant claimed ownership and possession of 200 acres of the same tract, alleged to be in the parish of West Baton Rouge, and set up title through mesne conveyances from a tax adjudication to the state of Louisiana made in 1886. Defendant further pleaded the curative prescription of three years provided by article 233 of the Constitution of 1898.’ The undisputed facts were that the tract of land as a whole had been for years regularly assessed in the parish of Iberville, and the taxes thereon regularly paid by the owners. On this ground the tax adjudication to the state was declared to be null and void The court, however, assigned additional reasons, as follows:
“Considered from another point of view, the state having continuously, since 1885, assessed the property to the plaintiff and his author and collected taxes thereon, waived the prior forfeiture or adjudication to herself.”
In Martin v. Barbour, 140 U. S. 646, 11 Sup. Ct. 949, 35 L. Ed. 546, the court said:
“The state is bound by the act of her officers in placing the lot on the tax books for the years 1885 and 1886, and receiving from the appellees the taxes for those years. Equity will treat the transaction as a waiver of the prior supposed forfeiture, and will regard the tax paid from 1885 and 1886 as so much paid toward redemption, and will permit the payment of the rest.”
See, also, Pitre v. Schleslinger, 110 La. 234, 34 South. 425.
*876 In Gilmore v. Schenck, 115 La. 386, 39 South. 40, the defendant claimed title, through mesne conveyances, from the state of Louisiana, to which the property had been adjudicated in 1885, for the unpaid taxes of 1885, assessed in the name of Morales. This tax title was in December, 1890, conveyed by the auditor of the state to one Corbin, the author of the defendant. Corbin, at the time of his purchase, paid taxes on the property up to December, 1890. Gilmore, the plaintiff, purchased the same property in July, 1890, from the heirs of another person, and in October, 1890, paid the taxes thereon for 1887, 188S, 1889, and 1890.
The tax adjudication of 1886 was disposed of by the court as follows:
“The tax collector, in receiving payment for taxes on the land from Gilmore in 1890, recognized that the state had taken nothing by the adjudication made to it in April, 1886, in an assessment made in the name of Morales, admitted Gilmore’s possession of the property at that time, and his liability for the taxes. * * «»
The court cited Martin v. Barbour, 140 U. S. 646, 11 Sup. Ct. 949 (35 L. Ed. 546), supra, and added:
“The state is as much estopped by her acts as any individual, and she is bound by the acts of her officers acting as tax collectors.”
In State ex rel. Benedict v. City of New Orleans, 112 La. 408, 36 South. 475, certain real estate assessed to Sam Boyd was adjudicated to the city for the taxes of 1891 and 1892, and the tax deed was duly recorded, but the city did not take possession of the property. Subsequently the same property was assessed to Sam Boyd for the years 1893 and 1894, and in 1895 was advertised and sold by the city treasurer for city taxes under said assessment. The tax purchaser recorded his tax title, took possession of the property, and paid taxes thereon. The city of New Orleans contended that the city treasurer had no authority to sell for current taxes property which had already been adjudicated to the city for delinquent taxes. The court held that the city of New Orleans was estopped to set up its title as against that of its vendee, or to assert a claim for the taxes of 1S91 and 1892. It was not pretended that the city treasurer had any authority to list the property for the years 1893 and 1894, or to make the tax sale of 1895, but it was held, notwithstanding, that the city, having presumably received the proceeds of the sale, and having (through its officers) assessed the property to the adjudicatee, could not be heard to say that the action of the treasurer was unauthorized. In the same case the court recognized the difference between the public or private property of a municipal corporation and “that which is held merely as a means of collecting the taxes assessed against it”; citing State ex rel. Lindner v. City of New Orleans, 110 La. 406, 34 South. 582. In Breaux v. Negrotto, 43 La. Ann. 426, 9 South. 502, the court held, in effect, that the title resulting from a tax adjudication was imperfect and inchoate while the tax debtor remained in actual adverse possession of the property, paying taxes thereon.
The adjudication to the state in 1891 was made under the revenue act of 1886, which made it the imperative duty of the tax collector to take actual possession of the property, and to lease it out. The same act made it the duty of the assessor to list the property separately as having been adjudicated to the state. Neither official performed the duty required of him.
In 1891, the property was assessed to Gauthreaux as usual, and he paid the taxes thereon in February, 1902. If the tax collect- or had taken actual possession, or had the property been separately listed to the state, or had the taxing officers informed Gauthreaux of the true situation, he would have received notice of the tax sale in ample time to redeem the property. As it was, he remained in undisturbed possession of the prop *878 <erty, and paid taxes thereon, for 10 years.
.In Martin v. Barbour, 140 U. S. 634, 11 Sup. Ct. 944, 35 L. Ed. 546, under a similar state of facts, it was held that the state was bound by the acts of its taxing officers, •and that such acts constituted in equity a waiver of the prior supposed forfeiture. In the same case it was further held that the purchaser from the state took the property subject to the same equities and defenses. The doctrine of that case has been thrice expressly affirmed by this court, and has become a rule of property. The principle of stare decisis forbids a change of jurisprudence on this subject-matter.
The assessment of 1890 was invalid, because one of the two tracts, assessed in the name of Clet Gauthreaux, belonged to the succession of his deceased wife, whose separate ownership antedated the marriage and was shown by the public records.
The state lost nothing by the failure of its officers to assert a tax title invalid in its inception.
We, however, rest our decision in this case on the grounds previously stated.
It is therefore ordered that the judgment of the Court of Appeal be affirmed, and that the defendant pay costs in this court.
BREAUX, C. J., and NICI-IOLLS and MONROE. JJ„ concur.
See dissenting opinion of Provosty, J., 46 South. 894.