No. 5968.

# IN RE. QUAKER REALTY COMPANY, PRAYING FOR POSSESSION.

## Syllabus.

A sale for taxes of "Six lots" of ground in the Square bounded by Lafayette, Port, Tonti and Rocheblave Streets, assessed to Gus Miltenberger, sufficiently describes the only six lots of ground in said square belonging to said Miltenberger; sufficiently at least to support the constitutional prescription of three years.

Appeal from the Civil District Court for the Parish of Orleans, Division "D," No. 102,801. Hon. Porter Parker, Judge.

W. W. Wall, for plaintiff and appellee.

E. Pomes, J. Watt, for defendant and appellant.

His Honor. JOHN ST. PAUL, rendered the opinion and decree of the Court, as follows:

Mrs. Cornelia Nott, wife of Gustave Miltenberger, acquired by purchase during the marriage, six lots of ground in the square bounded by Lafayette, Port, Tonti and Rocheblave streets.

It is not pretended that said lots of ground were other than community property, and hence to all intents and purposes the property of the husband "head and master" of the community. They were therefore properly assessed to him.

The succession of Gustave Miltenberger shows that he owned no other property in said square, and it is not pretended that he did.

Hence a sale for unpaid taxes of "six lots" in said square, assessed to Gustave Miltenberger, sufficiently de-

scribes the only six lots of ground in said square belonging to him as "head and master" of the community; sufficiently at least to support the constitutional prescription of three years.   See Weber vs. Martinez, 123 La., 663.

The other issues herein may be disposed of as follows:

1.   The property was not acquired by Mrs. Miltenberger from the succession of her mother, but by purchase from a succession of a stranger.

2.   The property was not occupied and no taxes were paid upon it during the three years next following the adoption of the Constitution of 1898, and during which the constitutional prescription ran in favor of the tax title then held by the State.

3.   A certificate by the State tax collector though conclusive as to the payment **vel non** of taxes, when it so recites, is not evidence at all that the property has or has not been previously sold for taxes.

4.   A judgment of a City Court cancelling a tax sale is a nullity.   **131 La., 496.**

5.   There is no evidence whatever that the property was sold by the State Auditor for anything less than the price fixed by law, and the presumption "**Omnia rite acta**" applies.

Judgment affirmed.

Opinion and decree, February 25, 1914.

Rehearing refused, March 23, 1914.

His Honor, CHARLES F. CLAIBORNE, filed the following dissenting opinion:

Petitioner avers that he purchased from John F. Odom the following described property, viz:

Six certain lots of ground situated in square 1,220, bounded by Lafayette Avenue, Tonti (late Force), Port and Virtue Streets designated by the Nos. 1 to 6; lot No. 1 forms the corner and measures 43' 3'' and 6' '' front on Tonti by 105' deep and front on Lafayette; lots 2, 3 4 and 5 measure each 43' 6'' front on Tonti Street by 105' deep; lot No. 6 forms the corner and measures 43' 3'' 6' '' front on Tonti by 105' deep and front on Port street.

That said John F. Odom purchased said property from the State of Louisiana by act of the Auditor dated September 1, 1909, acting under Section 3 of Acts 80 of 1888 and 126 of 1896, and the plaintiff prayed for a writ of possession, which issued as prayed for.

The Auditor's deed purports to sell to John Fred Odom a resident of East Baton Rouge the following described property, viz: six certain lots of ground with improvements thereon in the Third District of the City of New Orleans in square No. 1,220 said square being bounded by Lafayette, Force, Port and Virtue Streets; said lots front on Lafayette Street assessed to Gustave Miltenberger.

The price of sale was eighty-one cents, composed as follows:

Taxes for 1880 to 1883 . . . . . . . . . . . .14
Taxes for 1884 to 1899 . . . . . . . . . . . .67
                                           ——
                                           .81

By act of A. A. Ker, dated March 6, 1885, the State tax collector adjudicated to the State for unpaid taxes of 1882 the same six lots assessed to the same person. Reg. C. O., August 19, 1885, Bk. 122-587.

The writ was served upon Louis Manning and Adolph Anderson.

Thereupon Louis Manning enjoined the execution of the writ and in his petition alleged:

That by act dated October 19, 1908, he purchased for the price of $600 from E. H. Purcell a portion of ground in the same square above mentioned measuring 108' front on Tonti street by 105' deep and front on Lafayette; that by act dated July 22, 1911, he sold to Mrs. Adolph Anderson a part of said portion of ground measuring 35' front on Lafayette avenue by 108' deep and front on Tonti; that he and his authors have always had actual physical possession of said property; that accompanying his act of purchase were the customary clear receipts from the Register of Conveyances and from the State tax collector; that upon the faith of these certificates he purchased the property and paid the price.

He further alleged, among others, the following defense to plaintiffs claim to-wit:

That the State was estopped from claiming title to said property by reason of the adjudication made to her for taxes of 1882 because, after said adjudication, it continued to assess said property in the name of petitioner and of the previous owners, and accepted payment of taxes on said assessment from petitioner and his authors.

He offered in evidence sundry acts of sale showing that the property had been purchased by Mrs. Gustave Miltenberger in 1859, that she died in 1897, that her heirs sold to Jones in 1902, who sold in 1902 to Ed. H. Purcell.

He also offered in evidence a clean State tax certificate. This certificate shows that the property was assessed in the name of Gus Miltenberger from 1878 to 1900, inclusive in the names of C. W. Miltenberger, et al., for 1901 and 1902 and in the name of Ed. H. Purcell for the years 1903 to 1908, inclusive, that the taxes from 1878 to 1899

— 91 —

were marked on said certificate "can. by Jdg. 40, 872, April 18, 1900, taxes 1871 to 1899 inc.," and the taxes from 1900 to 1907 were marked "Paid." It was admitted that the taxes had been paid by the respective owners since 1900.

The Quaker Realty Company answered the injunction by setting up its own title and that of Odom, pleaded the forfeiture of the property of the State for the years 1871 to 1877 and the prescription of three years under article 233 of the Constitution of 1898.

There was no evidence in support of the forfeiture, and the plea of prescription does not avail as Manning has been in possession since the date of his purchase October 19, 1908.

There was judgment for the Quaker Realty Company and Manning has appealed.

My own opinion is that the defense of Manning should be sustained. His rights must be determined by the law and jurisprudence existing at the time he and his authors acquired said lots.

The interpretation of laws become a part thereof and rights acquired thereunder are vested rights which cannot be divested by a subsequent change of jurisprudence.

> 10 A. 122; 37 A. 55; 40 A. 500; 2 Black **(U. S.)** 603; 16 Howard, (57 **U. S.**), 432; 1 Wall., 175; 4 Wall., 270; 9 Wall., 477; 19 Wall., 678; 105 **U. S.**, 294; 101 **U. S.**, 677-678; 116 **U. S.**, 361; 109 **U. S.**, 105; 16 Wall., 634.

In the case of **Breaux vs. Negrotto, 43 A., 426,** decided in April 1891, the property of the plaintiff had been assessed for 1881 in the name of Delhomme, and when said taxes became delinquent, it was advertised for sale by the tax collector and in 1884 adjudicated to the State.

In 1889 this property was advertised for sale by the tax collector under Act 80 of 1888 and adjudicated to Negrotto. Breaux brought suit to annul the title to Negrotto, and among other grounds of nullity alleged that the State had continued to assess the property in his name after the adjudication to it and had collected the taxes from him, and "at all times treated and dealt with the property as his and that the State was thereby estopped to set up title in herself."

The Supreme Court maintained this defense and said:

"Where property which is delinquent for taxes is kept on the assessment rolls, and the tax for subsequent years is regularly assessed to the original owner and paid by him, it would be against justice and good conscience for the State, without notice to the owner, to sell the property, and have it adjudicated to the State."

In the case of **Gulf States Land Co. vs. Wade, 51 A., 251**, it was held that the State could not assert ownership of property as against one it had repeatedly recognized as owner.

The question was again decided in **Bookish vs. Wilbert, 115 La., 351**, decided in 1905.

The Court said:

"Where property has been forfeited or adjudicated to the State for nonpayment of taxes and the State continued to assess the same property to the owner and collect taxes thereon for a series of years, equity will treat the transaction as a waiver of the prior supposed forfeiture or adjudication."

Martin vs. Barbour, 11 Sup. Ct., 944; 140 U. S., 646; 35 L. Ed., 546; Petre vs. Schleslinger, 34 South. Rep., 425; 110 La., 234; State ex rel. Benedict vs. New Orleans, 36 So. Rep., 475; 112 La., 408.

— 93 —

It was again decided and made "Stare decisis" in Gauthreaux vs. Theriot, 121 La., 871, decided in April, 1908, when the Supreme Court repeated that:

"The State is bound by the acts of its taxing officers in placing property, previously adjudicated to the State for unpaid taxes in the regular rolls for succeeding years, and receiving taxes thereon from the tax debtor, continuing in undisturbed possession. Such acts will be considered in equity as a waiver of the prior adjudication, binding on the State and its assigns." Quoting Marin vs. Barbour, 140 U. S., 634, the Court continued: "The doctrine of that case has been thrice expressly affirmed by this Court, and has become a rule of property. The principle of Stare decisis forbids a change of jurisprudence on this subject matter."

See also Pitre vs. Schleslinger, 110 La., 234-338; Gilmore vs. Schenk, 115 La., 386 (388-400); Lisso vs. Giddens, 117 La., 514; 111 La., 338; 119 La., 1059. It will be noticed that plaintiff in injunction, Manning, purchased this property on October 19, 1908. long after all the above decisions had been rendered, and that John F. Odom and the Quaker Realty Company purchased in 1909 and 1911. Both acquired presumably with a knowledge of the jurisprudence governing the titles they purchased. In other words, Manning knew that the tax sale to the State was no longer an impediment to his acquiring a perfect title, by reason of the fact that the State had continued to assess the property in the name of its owners, regardless of the tax sale, and continued to accept from them the annual taxes levied against them, and continued to regard them and treat them as owners. On the other hand Odom knew, or was presumed to know, that by reason of the above action of the State, it had waived and renounced the

adjudication to it and had no title to transfer, and that was the reason probably that it could get no higher bid than eighty-one cents for property which sold a year before for $600. Upon the authority of those decisions Manning bought and paid the price, and acquired a vested title of which it was not in the power of the Courts to divest him by a change of jurisprudence. Decisions cannot effect vested rights retroactively any more than laws can.

The first case in which the Supreme Court questioned the correctness of the above decision is **In Re Veith, 130 La., 1108,** decided in 1912, long after Manning had purchased. In the case of **Quaker Realty Company vs. Labasse, 131 La., 996,** the Supreme Court said that these decisions applied only in cases where the tax debtor was in actual possession of the property at the time of the tax sale to the State. See also **Quaker Realty Company vs. Purcell, 131 La., 496.**

But this condition of possession did not seem to be essential in the reasons for judgment or in the syllabi of the anterior cases which had formed **stare decisis.**

For these reasons I am of the opinion that under the law and the jurisprudence existing at the time Manning purchased he acquired a good and valid title, which cannot be divested by any subsequent change of jurisprudence. In other words it cannot be law, that one's title to property shall depend upon the fluctuations of the judicial minds. The property of the citizen is of too sacred a character to be taken away from him in the manner proposed herein.

Opinion and decree, February 25, 1914.