COMMUNITY NATURAL GAS CO. v.
CORPORATION COMMISSION et al.
LONE STAR GAS CO. v. SAME.

Nos. 27259, 27628.   Jan. 25, 1938.

Rehearing Denied Feb. 21, 1938.

Roy C. Coffee, Marshall Newcomb, C. C. Hatchett, and Blakeney, Wallace, Brown & Blakeney, for plaintiffs in error.

J. B. A. Robertson and S. J. Gordon, for Corporation Commission.

D. A. Stovall, for citizens of Hugo.

S. D. Williams, for citizens of Pauls Valley and Wynnewood.

Walter Hubbell, for City of Walters.

BAYLESS, V. C. J. Community Natural Gas Company, a corporation, and Lone Star Gas Company, a corporation, bring separate appeals to this court, under Nos. 27259 and 27628; the Corporation Commission of Oklahoma et al. being defendants in error in each case. The appeals are consolidated and involve complaints concerning the actions of the commission in consolidated cause No. 10777 before the commission. The cause was instituted December 28, 1930, by citizens of the town of Walters, Okla., seeking to obtain a reduction in the burner-tip rates for natural gas. Citizens of other towns in southern Oklahoma joined with similar pleas until eventually the citizens of 26 towns were involved. Community Natural Gas Company, hereinafter referred to as Community, serves the users of natural gas in these towns with burner-tip service. It purchases the natural gas in wholesale quantities at the city gates and distributes and sells it to users within the respective towns. Its business is wholly intrastate and is wholly subject to regulation as a public utility by the state of Oklahoma (article 9, Constitution of Oklahoma, and chapter 93, S. L. 1913, as amended by Laws 1929, c. 353, sec. 1). Community makes such purchases of natural gas from Lone Star Gas Company, hereinafter referred to as Lone Star, which is a foreign corporation, admitted to do business in Oklahoma, and, in so far as we are shown, is engaged in intrastate and interstate business and probably is not subject to regulation by the state of Oklahoma. Virtually the entire capital stock of these corporations is owned by Lone Star Gas Corporation, a corporation, hereafter referred to as Holding Company, a foreign corporation, not admitted to do business in Oklahoma, and, in so far as this case is concerned, not subject to regulation in Oklahoma.

The commission conducted hearings and received much evidence. Because of this intercorporate affiliation, and certain contractual relations, the commission desired evidence of the business practices among these corporations in order to determine the effect thereof upon the rate base of Community. Lone Star furnished evidence. Holding Company refused on the theory that it was not in anywise subject to the jurisdiction of the state of Oklahoma. The commission deemed itself unable to proceed to a final order fixing a permanent rate without the evidence it desired from Holding Company. After making detailed findings of fact as to the rate base of Lone Star, it announced that no findings could be made finally as to Community or Lone Star, nor a permanent rate ordered until the evidence it desired was furnished. An appeal was taken from the order of the commission, No. 6201, embodying these issues, and our opinion thereon is reported as Lone Star Gas Co. v. Corporation Commission, 170 Okla. 292, 39 P. (2d) 547.

In that opinion we approved the formula adopted by the commission upon which to arrive at the rate base of Community, which included evidence regarding the business of Lone Star and Holding Company. We upheld the right of the commission to demand such evidence from them. We approved the establishment of a temporary reduction in burner-tip rates, as probably justified by the evidence introduced when further supported by the additional evidence sought, and as proper in a punitive nature to enforce the will of the commission on the obstinate Holding Company, which alone would actually be affected by any confiscation arising from the temporary rate. We disapproved the effort of the commission to regulate the price at which Lone Star could sell natural gas to Community, and we disapproved the use of distress labor prices in arriving at costs in the rate base of Lone Star. We remanded for further testimony and a final order and permanent rate. The appeal before us now concerns what was done in obedience to the remand.

By express language in order No. 6201, the reduction in burner-tip rates was tempor-

ary, (1) because sufficient evidence was not available to justify a permanent rate under the formula adopted; and (2) it was said the additional evidence desired might justify a further reduction. In other words, additional evidence was necessary to permit the establishment of a permanent rate differing from the one in effect when the investigation began. It was possible that when all of the evidence was in, no reduction would be legally permissible, or that an increase would be proper. Our remand affirmed the power to demand this evidence and directed the taking of it.

After the commencement of the investigation, Community petitioned for a raise in rates. Following the remand of the former appeal, Community again petitioned for an increase in rates. Therefore, in addition to the pleas for a reduction in rates, there were pleas for an increase in rates. The dissatisfaction of both utility and customers with existing rates is manifested, and the commission had a duty to perform.

After receiving our mandate and suspending further the temporary rates, the commission conducted an investigation of the records of the Holding Company, and set the cause for hearing at different dates, but never thereafter held another hearing. On May 5, 1936, the application for an increase in rates filed July 19, 1935, the second one filed by Community, was ordered docketed under No. 16956, as a separate proceeding. On June 5, 1936, a date duly set for hearing the cause, Community and Lone Star appeared ready for trial. The commission refused to hear them, and entered a general order disposing of the entire matter. These appeals are from those orders.

By these orders, the following was provided: (1) The rate case against Community, that is, the pleas to reduce rates, was dismissed without prejudice; (2) the case against Holding Company was dismissed without prejudice; (3) order No. 2591, suspending further the operation of the temporary rates, was vacated and set aside; (4) order No. 6201, the order involved in the former appeal, was adopted as the permanent rate for the burner tip; (5) all of the findings of fact of order No. 6201 are adopted as the findings of fact to support the permanent rate (although it is to be noticed that such findings relate to the rate base of Lone Star and not Community); (6) required Lone Star to reduce its gate rate to Community 10c per M. C. F., when we had expressly condemned such an order in our former opinion;

(7) required Community to reduce its burner-tip rate 10c per M. C. F., as a resulting savings, without basing the same on evidence; and (8) rendered judgment against Community for $168,901.14, for overcollections— that is, the difference between the old rate and the temporary rate now made final.

Among the contentions presented in the former appeal was the one that in acting thereon this court was performing a judicial function and not a legislative function. In Pioneer Tel. & Tel. Co. v. State, 40 Okla. 417, 138 P. 1033, following Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 53 L. Ed. 150, 29 S. Ct. 67, we held that in considering appeals from rate orders affecting transportation and transmission companies we were acting legislatively and not judicially. Original jurisdiction of the commission, and appellate jurisdiction of this court, over gas companies was not established until 1913 (chapter 93, S. L. 1913). In many cases we had said that our function in those appeals was likewise legislative. We did not answer the contention made in the former appeal for several reasons, the primary one being that the order under consideration was temporary only. The temporary order and appeal were an interlude in the cause. What we did in our earlier opinion was to announce rules of law relating to the powers of the commission and the manner in which they might be enforced, and to make a temporary rate order of our own. Nevertheless, this did not make our action judicial, although the rules of law announced undoubtedly will be adopted in strictly judicial proceedings. This is pointed out in Prentis v. Atlantic Coast Line Co., supra:

"But we think it equally plain that the proceedings drawn in question here are legislative in their nature, and none the less so that they have taken place with a body which, at another moment, or in its principal or dominant aspect, is a court such as is meant by sec. 720. A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial, in kind, as seems to be fully recognized by the Supreme Court of Appeals (Com. v. Atlantic Coast Line R. Co., 106 Va. 61, 64, 7 L. R. A. (N. S.) 1086, 117 Am. St. Rep. 983, 55 S. E. 573), and especially by its learned president in his pointed remarks in Winchester &

S. R. Co. v. Com., 106 Va. 264, 281, 55 S. E. 692. See further (citing cases).

"Proceedings legislative in nature are not proceedings in a court, within the meaning of Rev. Stat. sec. 720, no matter what may be the general or dominant character of the body in which they may take place (citing case). That question depends not upon the character of the body, but upon the character of the proceedings (citing case). * * * The decision upon them cannot be res judicata when a suit is brought (citing case). And it does not matter what inquiries may have been made as a preliminary to the legislative act. Most legislation is preceded by hearings and investigations. But the effect of the inquiry, and of the decision upon it, is determined by the nature of the act to which the inquiry and decision lead up. A judge sitting with a jury is not competent to decide issues of fact; but matters of fact that are merely premises to a rule of law he may decide. He may find out for himself, in whatever way seems best, whether a supposed statute ever really was passed. In Pickering v. Barkley, Style 132, merchants were asked by the court to state their understanding as an aid to the decision of a demurrer. The nature of the final act determines the nature of the previous inquiry. As the judge is bound to declare the law, he must know or discover the facts that establish the law. So, when the final act is legislative, the decision which induces it cannot be judicial in the practical sense, although the questions considered might be the same that would arise in the trial of a case. If a state Constitution should provide for a hearing before any law should be passed, and should declare that it should be a judicial proceeding in rem and the decision binding upon all the world, it hardly is to be supposed that the simple device could make the constitutionality of the law res judicata, if it subsequently should be drawn in question before a court of the United States. And all that we have said would be equally true if an appeal had been taken to the Supreme Court of appeals and it had confirmed the rate. Its action in doing so would not have been judicial, although the questions debated by it might have been the same that might come before it as a court, and would have been discussed and passed upon by it in the same way that it would deal with them if they arose afterwards in a case properly so called. * * *"

So, although we announced rules of law and procedure for the guidance of the commission, the nature or character of the commission's action and our action thereon should determine whether we acted legislatively or judicially. It is beyond dispute that the commission was acting legislatively. It had not completed its work, as was recognized by everyone having any connec-

tion with the matter, and the commission intended to proceed further in the matter. The action which we took was legislative in character, for we not only examined the record, but we corrected what the commission had done and substituted our own order therefor. We not only debated the correctness of its action, but when we found any error we did not content ourselves by pointing it out, but made the proper order. Our order of remand directed further proceedings and looked ultimately to the final order or permanent rate. Thereafter, this court in the case of Oklahoma Cotton Ginners Ass'n v. State, 174 Okla. 243, 51 P. (2d) 327, overruled our earlier opinions saying that appeals from rate orders affecting utilities other than transportation and transmission companies were legislative, and held that such appeals were judicial. The writer of this opinion dissented from that view, and held to the view he had in writing the opinion in the former appeal; although he now recognizes the rule announced in the Ginner's Case as the law applicable.

The writer of this opinion was the author of the opinion in the former appeal and at that time entertained no doubt that this court was acting legislatively in reviewing the order of the commission. In fact, the last pronouncement of this court on the matter was contained in City of Poteau v. Am. Ind. O. & G. Co., 159 Okla. 240, 18 P. (2d) 523, written in June, 1932, and in order that there may be no ground for supposing that the language of the opinion in that case was misconstrued, the following is quoted therefrom:

"It was held in Atchison, Topeka & Santa Fe Ry. Co. v. State, 23 Okla. 510, 101 P. 262, that in establishing a rate that the Corporation Commission acts in a legislative capacity and the Supreme Court of the state of Oklahoma in reviewing an order of the commission establishing a rate in which an appeal has been taken acts in a legislative capacity. This seems to be the well-established rule in this court as well as in the United States court. Chicago, Rock Island & Pacific Ry. Co. v. State. 24 Okla. 370, 103 P. 617, 24 L. R. A. (N. S.) 396: Atchison, Topeka & Santa Fe Ry. Co. v. Miller, 28 Okla. 109, 114 P. 1104: Pioneer T. & T. Co. v. Bartlesville. 40 Okla. 583, 139 P. 694. In Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 53 L. Ed. 150, the court holds that the establishment of railway passenger rates by the Virginia State Corporation Commission is not res adjudicata in a suit which seeks injunctive relief on the grounds that the rates are confiscatory, although such commission for some purposes is a court and acted only after hearing and in-

vestigation, since proceedings to establish rates are legislative and not judicial in their nature. * * * Owing to the fact that the Corporation Commission in prescribing rates and regulations for public utilities acts only within the powers delegated by the state Constitution, which are legislative and not judicial, and on appeal from the Corporation Commission the Supreme Court may review an order of the commission prescribing a schedule of rates or charges to ascertain the reasonableness or justness thereof and if found to be unreasonable and unjust may prescribe a schedule of rates to be enforced in lieu of the rates prescribed by the commission, we are of the opinion and hold that the rate as fixed by the Corporation Commission on March 13, 1928, according to the facts at time of the inquiry, should be for the first 50 000 cubic feet 38 cents per 1.000 cubic feet, for the next 150,-000 cubic feet 25 cents per 1.000 cubic feet, for the next 300.000 cubic feet 18 .cents per 1.000 cubic feet, and for all over 500,-000 cubic feet ten cents per 1,000 cubic feet until changed by the commission based upon a fair, just, and reasonable rate at time of inquiry."

In the opinion in the Ginner's Case, supra, is a review of some of the former opinions of this court holding to the same effect. In addition to these, there are many more: Oklahoma Natural Gas Co. v. State, 78 Okla. 5, 188 P. 338; Oklahoma Nat. Gas Co. v. Corp. Comm., 90 Okla. 84, 216 P. 917; Okmulgee Gas Co. v. Corp. Comm., 95 Okla. 213, 220 P. 28; Consumers Gas Co. v. Corp. Comm., 95 Okla. 57, 219 P. 126; McAlester Gas & Coke Co. v. Corp. Comm., 101 Okla. 270. 224 P. 698; McAlester Gas & Coke Co. v. Corp. Comm., 102 Okla. 118. 227 P. 83; Southwestern Natural Gas Co. v. Cherokee Pub. Ser. Co., 172 Okla. 325, 44 P. (2d) 945. In addition to this the various federal courts in many' cases understood that this court had so announced the law, and accepted our statement of the law as binding upon them in their consideration of the federal questions involved. A list of these cases will be found in the headnote to the opinion of the Supreme Court of the United States in Corporation Comm. v. Cary, 296 U. S. 452, 80 L. Ed. 324, on page 326.

It is clear that the action we took was legislative in character and not judicial. As stated above, it was beyond dispute that the commission was acting in a legislative proceeding, and in reviewing and correcting what it had said and done we did not stop with pointing out the errors committed, but we proceeded to substitute for its order the order which we felt should have been made by the commission. If we had been acting in a judicial capacity, we would not have been called upon to do this, and our actions were and are inconsistent with a judicial review. As is stated in the Prentis Case, supra, it is the nature of the action which is taken that determines this question. Therefore, any later announcements of law upon the same, or other cases, do not suffice to change the essential nature of our previous action in relation to the order considered on the former appeal.

The primary question of law before us is whether in the light of the opinion in the Ginner's Case, supra, we are to adhere strictly to our former opinion, and treat all matters touched upon therein as res judicata, or whether, acting in a judicial capacity, we are to refuse approval to the latest orders of the commission under the circumstances of the case as they now exist. To adopt the first alternative would be manifestly inequitable. We failed to speak definitely upon the issue in our former opinion, and took steps which were legislative in nature. If we had spoken definitely and had said we were acting legislatively, the rule announced in Pioneer Tel. & Tel. Co. v. State, supra, would have applied:

"Three remedies were available to the appellant by which the validity of said order might be challenged: (1) by appeal; * * * (2) by application made directly to the commission to set aside the order; * * * and (3) by an action in equity to restrain its enforcement. * * *"

If we had said we were acting judicially, then Community would have had an opportunity to seek a review by the Supreme Court of the United States of our application of the law relative to the federal questions. Our silence undoubtedly left some feeling of uncertainty in the matter. It is to be considered, also, that at that time Community had its choice of forums—either federal or state. The uncertainty existing in our opinions at that time led the federal courts to assume jurisdiction of an action in equity to review a supposed legislative order. Corporation Comm. v. Cary, Tr., 296 U. S. 452, 80 L. Ed. 324. We felt no doubt existed on the matter at the time of our former opinion, and since the matter we were called upon to review was a temporary order, something in the nature of an interlocutory step, and since we felt that the investigation would be pursued to its logical and legal end in conformity with the rules announced therein, we did not deem it necessary to pass upon the issue.

Ordinarily, the rule of res judicata applies only to judicial proceedings. As was pointed

out in the Prentis Case, supra, the findings of fact and rules of law announced in a legislative proceeding cannot be res judicata upon the issues subject to the scrutiny of a court in a judicial review.

However, if it should happen that such rule was applicable to a situation such as this, we would be forced to apply to it the rule we applied in the case of Carter Oil Co. v. Eli, 164 Okla. 273, 23 P. (2d) 985, which is stated as follows:

"Where the judgment of a lower court has been reversed by this court upon an appeal by proceedings in error and the case remanded to the lower court for a new trial, the lower court, upon the second trial, is required to follow, as the law of the case, the judgment of this court therein rendered. On a second appeal in said case to this court, the decision of this court and rules of law by it announced in its opinion on the first appeal constitute the law of the case as to all points decided in the first opinion, but this is not a cast-iron rule incapable of relaxation in any event. On a second appeal to this court, it may review and reverse its former decision in the same case, where it is satisfied that gross or manifest injustice has been done by its former decision, and will do so where the mischief to be cured far outweighs any injury that may be done in the particular case by overruling a prior decision, 'and especially where the party benefiting from the erroneous judgment, and in full reliance thereon, has not surrendered substantial and valuable rights which cannot be restored by the court."

In view of what we have pointed out concerning the former order of the commission, and our opinion thereon, we think it would be manifest injustice to now hold that later views of law impel an adherence to the strict letter of that opinion as approving in a judicial review the legislative action therein considered.

Community should not be charged with the waiver of any of its rights for its failure to pursue one of the remedies, when we did not then think it could do so because the legislative order was not yet final. Nor do we think that we should now hold that the rule of res judicata applies and forbids a judicial review thereof now.

Since the protection of the constitutional guaranties can be had by resort to equity, it necessarily follows that such relief cannot be had until an equitable showing is made. The general rule is stated in 51 C. J. 85, sec. 152:

"The courts have no general supervisory power over public utility commissions, and, except as wider authority may be expressly delegated by statute, judicial interference with their orders by way of injunction must be grounded upon some illegal incroachment upon property rights. Thus, in accordance with the rule applicable to injunctions generally, a suit for an injunction to restrain the enforcement of an order of the commission will not lie in the absence of some ground for equitable relief."

A discussion of the general rule that while a case is pending and undetermined before a commission a utility does not have recourse to courts of equity for relief will be found in P. U. R. 1924 E, 6. The Supreme Court of the United States said in Gilchrist v. Interborough R. T. Co., 279 U. S. 159, 73 L. Ed. 652, that it is necessary to show that a public utility commission has taken or is about to take some improper action, and that such action will result in the enforcement of orders resulting in confiscation before the federal courts will be justified in granting equitable relief. Other cases in which discussions of conditions precedent to the granting of equitable relief are: Prendergast v. N. Y. Tel. Co., 262 U. S. 43, 67 L. Ed. 853, 43 S. Ct. 466; L. & N. Ry. Co. v. R. R. Comm., 63 Fla. 491, 58 So. 543; and Ill. Bell Tel. Co. v. Ill. Commerce Comm., 306 Ill. 109, 137 N. E. 449 (affirming 227 Ill. App. 23). Many other cases will be found cited in P. U. R. Digest vol. 2, Injunctions, secs. 2, 4, and 11-16.

At the time of the former appeal the commission had suspended the operation of the temporary rates and had permitted Community to give a bond for this purpose. We directed in our mandate that no further suspension be permitted unless the appealing parties showed good faith. When our mandate had been received by the commission, the companies appeared and fully satisfied the commission that they would furnish all of the evidence desired from them; and thereupon the commission permitted the further suspension of the operation of the temporary rate. When the commission had entered the orders from which the present appeals are taken, it refused to permit Community to suspend the operation of the permanent rate ordered. Thereupon, Community applied to this court for permission to supersede said orders, and this court granted the application. Therefore, allowing for this short period of time, there has never been a time when Community was threatened with the immediate execution of the orders of the commission, and it is doubtful whether it could have made a showing in equity under the rules above stated. It is reasonably certain that if we now approve the orders of the commission now under

consideration, we will be reversing the processes. We will be saying now that we acted judicially earlier, and that Community is to be penalized for its lack of ability to anticipate changes in the views of this court on the law.

Such a situation would undoubtedly appeal to a court of equity. The uncertainty existing in our opinions afforded reason why the federal courts undertook to afford equitable relief from the asserted confiscation arising from a final legislative act contained in Corporation Comm. v. Carey, supra.

A rate proceeding is legislative in character, but it is conducted along and governed by equitable principles. The object of such a proceeding is to arrive at what is fair and reasonable. The terms "fair," "reasonable," "fair and reasonable," "just, reasonable and adequate," appear with such frequency in the cases as to preclude citation. P. U. R. Dig., vol. 4, Rates, sec. 120. The reasonableness of a rate is a question of fact. Ill. C. Ry. Co. v. Interstate C. C., 206 U. S. 441, 51 L. Ed. 1128, 27 S. Ct. 700. The reasonableness of a rate cannot be exactly determined by any rule or rules or computed by any mathematical calculation. Re Ala. Power Co. (Ala. P. S. Comm.) P. U. R. 1925C, 840. "The determination of a rate to be charged involves the question of dividing the burden between the various classes and groups. * * * It appears to be not an exact science, but must be based on a broad consideration of all factors involved." Re Pac. Tel. & Tel. Co.· (Cal.. Ry. Comm.) P. U. R. 1930C, 481, 515. The interests of the public as well as the owner of the property must be considered. Covington, etc., Co. v. Sanford, 164 U. S. 578, 41 L. Ed. 560. It is not optional as to what rates shall be, but it is the duty to satisfy the demands of law and equity. Re Mountain States Tel. & Tel. Co., P. U. R. 1922E, 293. One of the customary remedies for relief from unfair or unreasonable rates is the equitable remedy of injunction. Generally, the basis for relief sounds in constitutional guaranties, but courts of equity furnish direct relief. Pioneer Tel. & Tel. Co. v. State, supra; 51 C. J. 84, secs, 151 et seq. The cases involving judicial reviews in these matters do not say that the judicial review is equitable in that they constitute a branch of the law of equity, but sight is never lost of what is the fair, or reasonable, or just, or, in the final analysis, equitable thing to do.

The commission has the duty to act when applications are addressed to it seeking a change in rates. The first application was filed in this matter in December, 1930. Hearings were held and order No. 6201, the temporary order spoken of herein, was made March 9, 1933, and the appeal therefrom was disposed of and the mandate returning the matter to the commission from this court was issued January 15, 1935. About 18 months later the order from which the present appeal is taken was entered. Twice during that six-year period Community applied to the commission for relief in the form of an increase in rates. Deducting the period of time during which the obstinacy of Holding Company prevented the commission from acting, there yet remains a period of upwards of three years for the commission to act upon these applications. The first application, which was on file before the former appeal, the commission seems to have ignored altogether, unless it can be said that making the temporary rate the permanent rate was incidentally a denial of this application. The commission did not say so, and since it made no findings of fact as to Community's rate base, we have nothing before us from which we can infer as much. The second application was stricken from this proceeding, and was docketed as a separate cause to be heard in the future. Thus the commission has failed to give attention to Community's applications for an increase in rates. In McAlester Gas & Coke Co. v. Corp. Comm., 101 Okla. 268, 224 P. 698, we said:

"In a case where a public utility has properly, sufficiently, justly, and lawfully instituted proceedings before the Corporation Commission for an increase of its rates and charges, and alleges that its present rates are confiscatory and deprive it of due process of law, the Corporation Commission, upon assuming jurisdiction over the cause, is required by law to proceed with a hearing on said case. and to make a final determination of the issues, and in so doing it must not, without the consent or fault of the utility, permit unnecessary, unreasonable, unjust or unjustifiable delay."

In that case the application was filed October 4, 1921, a hearing was held and final submission of the case to the commission occurred February 2, 1922. January 18, 1924, the commission denied the application, and the company appealed. It applied for immediate relief in the nature of a temporary increase in rates, to be guaranteed by a bond for repayment if improvidently granted, and this court granted such relief. It did so out of consideration of the unreasonable and unjustifiable delay in passing upon the application. In that opin-

ion we pointed out the safeguards which surround a utility whose property is devoted to public use and whose rates are subject to state regulation. In view of what was said in that case, we must hold as a matter of law that the commission had the duty to pass upon both applications, which were timely filed, and it committed error in apparently ignoring one and continuing another. In Rockland L. & P. Co. v. Maltbie, 241 App. Div. 122, 271 N. Y. S. 858, temporary rates were established pending further hearing, but they were enjoined where it was shown that as much as a year had elapsed and no date was set for further hearings. In Prendergast v. N. Y. Tel. Co., 262 U. S. 43, 67 L. Ed. 853, 43 S. Ct. 466, it was said that temporary rates would not be enjoined unless it appeared that some rule of equity was violated, but even under such circumstances consideration would be given to the fact that further hearing was set for an early date. It is true, as stated in the commission's last order, that much time has elapsed and many changes in conditions combine to make the evidence theretofore taken unreliable and probably insufficient to support a permanent rate as of the date of the last order. Such evidence will be of assistance and its value should not be lost by dismissal. But this does not justify a dismissal of the applications, but rather calls for additional hearings with due expedition in order that some rate can be established by evidence; nor does it justify the establishment of a permanent rate upon the existing record on the theory of res adjudicata.

The money judgment against Community for the amount of the overcollections was rendered following the making of the temporary rate into the permanent rate, and this upon the ground that the rate, having been approved in our former opinion, was final from that time upon the principle of res adjudicata. We have heretofore pointed out why res adjudicata cannot apply to our former opinion on the legislative issues when subjected to the scrutiny of a court in a judicial review. The present order refers to the language of our former opinion, and infers from such language that disbursement of the overcollections was to be made at once. When the mandate was received, the commission did not so interpret such language, but on the contrary treated the disbursement as being conditioned upon the continued obstinacy of the Holding Company in refusing access to its books and records, and to be postponed until the permanent rate was ordered in the event Holding Company offered the desired evidence. This interpretation was in keeping with the spirit of the former opinion, and was the equitable thing to do. We will adhere to equitable principles, and will vacate this judgment. We will leave the rendition of any judgment and the enforcement thereof to be decided when the commission has made a permanent rate after a full hearing, such as is contemplated by article 9, Const. of Okla. We have heretofore pointed out why we approved the temporary rate upon the record in the former appeal. We overlooked the failure of the commission to make findings of fact as to the Community. The findings of fact made as to Lone Star indicated prima facie that the reduced income from Community by virtue of the contemplated reduction of the expense for gas purchases by Community would not result in confiscation of Lone Star's property. The commission on a theoretical basis found that this reduction in cost was an automatic savings to Community, and stated that additional savings might be found and ordered after further investigation. We disapproved the finding in so far as it was based upon theory only, and directed findings of fact on this point when all of the evidence was submitted. The commission did not obey this direction. We quote from its present order:

"The commission has before it the complete transcription of all the evidence taken in this case, upon which the Supreme Court based its opinion, no new oral testimony having been received since the cause was remanded to the commission; but much documentary evidence on file in the commission, and which are public records, the contents of which the commission takes notice, has been considered by the commission. The commission also has before it the original brief filed by it, through its counsel, in the Supreme Court in the original appeal taken by the defendant companies. This brief is very comprehensive and exhaustive of the issues presented to the Supreme Court in the appeal herein. The commission also knows the contents of its Order No. 6201, as made and entered herein on March 9, 1933. The commission finds that said order contained a full and complete finding of facts and conclusions of law, the latter thoroughly documented and supported by citation of cases touching upon the questions raised and fully justifying the conclusions reached. It is true that some portions of that order are now inapplicable to the case at bar, on account of the setting aside of Order No. 6202, and the dismissal of this cause in so far as the Community and Holding Company is con-

cerned, but that, as a whole, said order reflects the present opinion of this commission with the exceptions of those portions thereof which have become irrelevant and inconsistent with the conclusions of the commission reached in the present case subsequent to the decision of the Supreme Court hereinabove mentioned. The commission is of the opinion that the permanent rate which the Lone Star Gas Company charges the Community for natural gas delivered at the city gate of the various cities, towns, and communities, under the circumstances and facts as disclosed by the record in this case, should be the same as the temporary rate as made and fixed in Order No. 6201, that is, a reduction from 40c per M. C. F. to 30c per M. C. F., or a ten cent reduction per M. C. F. The commission finds from the evidence that 30c per M. C. F. is a just, fair and reasonable rate. The commission further finds that it has jurisdiction, and, that it is within its power to order the Community to pass this ten cents per M. C. F. reduction on to the burner-tip consumers of the Community, and, the commission further finds and holds that the saving of ten cents per M. C. F. to the Community is a reasonable item of expense to be set up on its books for gas purchased and that it is within the power of the commission to continue in effect the duty and service of the Community to pass the ten cents per M. C. F. saving on to its consumers, and that if for any reason it has neglected so to do then this order shall affirm and sustain the provisions of Order No. 6201, made and entered herein on March 9, 1933, in respect to the passing on to the consumers at the burner-tip the said ten cents per M. C. F. The commission hereby adopts the language of Order No. 6201 and re-adopts said Order No. 6201 in its entirety, subject to the exceptions herein noted, and the adoption of said order makes the same a part of this order by reference, to all intents and purposes as fully and completely as if the same were embodied herein, except, of course, the exceptions herein noted."

To now give full legal force and effect to a permanent rate based solely upon evidence insufficient in law to support a temporary rate, and to render a money judgment thereon to the extent of $168,901.14, is to penalize Community to that extent without due process of law. In the case of Oklahoma Operating Co. v. Love, 252 U. S. 331, 64 L. Ed. 596, 40 S. Ct. 338, the fact that a public utility was facing a penalty of $500 per day arising from orders of the Corporation Commission of Oklahoma which had not been reviewed and approved judicially was held to be sufficient reason for granting equitable relief. While we are passing upon this matter now judicially, as a court, nevertheless, our action upon the issues of due process under the federal Constitution, Amend. 14, is subject to review by the Supreme Court of the United States. The same principles which move it to restrain confiscatory legislative acts will likewise move it to reverse judicial acts having a like purpose and effect. The money judgment must be, and is hereby, vacated.

The regulation of the rates of public utilities for intrastate services rendered in Oklahoma rests with the state of Oklahoma. It is a legislative function, and by article 9, Const. of Okla., this power is vested in the Corporation Commission. This commission may initiate proceedings, as well as hear pleas of the public or the utilities. The state of Oklahoma is a nominal party to all such proceedings by virtue of its interest in such matters, and in some appeals must be an actual party. (Article 9, sec. 20, Const. of Okla.) Therefore, the state of Oklahoma is a party, and by its agency is prosecutor, judge, and executioner. Nevertheless, because of these anomalous positions, the state of Oklahoma labors under a most solemn duty to see that justice is done all parties. We have heretofore pointed out the equitable principles which govern the final results. These same principles govern the tactics of the pursuit as well as the results. When a state enters a forum it stands in no better position in respect of the procedure and final judgment than the humblest citizen of the state. In Martin v. Barbour, 140 U. S. 634, 35 L. Ed. 546, 11 S. Ct. 944, it is said that a state having established a bureau for the performance of services for it, is bound to see that those over whom it exercises control are not misled by such agency. In State v. Milk, 11 Fed. 389, it is said that the state is bound to use resolute good faith in dealings with individuals.

In Order No. 6201, the commission recited that evidence which it desired was withheld from it. We desire to quote certain findings:

"57. That this order is in the nature of a temporary order.

"58. That were all the facts before this commission, relative to the intercorporate relationship of the Lone Star Gas Company and the Lone Star Gas Corporation, a further reduction in the gate rate charged to the Community Natural Gas Company, by the Lone Star Gas Company at the city gate of the cities and towns served by the Community Natural Gas Company, located within the state of Oklahoma, might be justified.

"59. That a further investigation of the Lone Star Gas Corporation, the Lone Star Gas Company, and the Community Natural Gas Company, and the relationship existing

between and among these concerns, may well justify an additional adjustment downward of the rates charged by the Community Natural Gas Company, for gas delivered to consumers at the burner-tip, in the cities and towns served by the Community Natural Gas Company, within the state of Oklahoma, in addition to the reduction of 10 cents per M. Cu. ft. in the burner-tip rate, resulting from a reduction of 10 cents per M. cu. ft. in the amount paid by the Community Natural Gas Company. * * *

"60. That further consideration of the distribution properties of the Community Natural Gas Company may justify a further reduction in the rate charged by the Community Natural Gas Company for natural gas at the burner-tip. * * *"

In the briefs filed by the commission and in its statements to the court in oral argument on the former appeal, we were told that from investigations of documentary evidence obtained from Community, it was thought that an investigation of the management services rendered Community by the Holding Company would disclose abuses of the relationship and furnish evidence to support orders regulating the amount of such charges as proper items of expense for Community to set up on its books. The obstinacy of Holding Company in refusing the commission access to its books and records lent strength to the supposition which the commission then entertained. We approved the commission's position, and justified the legality of its demand for access to those books and records. At that time the issue of the commission's power in that respect was new in Oklahoma, and pending the former appeal in this court the Supreme Court of the United States held that foreign corporations situated as Holding Company in this case must grant access to public service commissions to its books and records as a part of the investigation of the rates to be charged by affiliated companies. See State Corp. Comm. of Kansas v. Wichita Gas Co., 290 U. S. 561, 78 L. Ed. 500, 54 S. Ct. 321. This set the question at rest, and we so said in our opinion.

As stated hereinbefore, when the cause was remanded to the commission, the companies appeared and offered access to such books and records in order that the commission might pursue its investigation. The commission's Order No. 2591 so states. In its orders now under consideration the commission recites that it investigated such books and records. In this order it recites that no new oral testimony has been received since the hearings prior to the former appeal. No mention is made of what the books

and records of Holding Company disclosed with regard to the abuses of the so-called management services. That part of the case is disposed of with the statement that no further investigation is necessary because of the orders being entered as to Community. To us this appears simply to be an evasion of the issue presented. In view of the directions of our order of remand, and in view of the prominent part that issue played in the former appeal, to now ignore it in this state of the cause is to change fronts.

We gave our approval to its theory and actions as steps in a legislative act, but we cannot now, on legal or equitable principles, approve a permanent rate order which ignores the issue. The evidence which the commission procured from those books and records either sustained or disproved its supposition, and such evidence, whatever it is, must have consideration in any rate established by the commission. The good faith which the state of Oklahoma owes parties in these hearings requires such.

The disposition of the appeal which we now make is taken in consideration of the various aspects of the cause discussed hereinbefore.

In all of this we intend to, and do, act in a judicial capacity as distinguished from a legislative capacity. We recognize and adhere to the law announced in the Ginner's Case, supra. We have examined the record to see whether Community has had a hearing consonant with legal processes and in keeping with its constitutional rights, and whether the evidence supports the findings. The courts in affording a judicial review of rate orders in respect of constitutional rights must exercise an independent judgment upon the weight of the evidence, but this does not prevent resort to nor reliance upon the findings of fact, and the sifting and classification of evidence by an informed and competent legislative agency. St. Joseph, etc., Co. v. U. S., 298 U. S. 38, 80 L. Ed. 1033, 56 S. Ct. 720. The Constitution of Oklahoma, art. 9, sec. 22, requires that on notice of appeal from rate orders the commission shall prepare findings of fact and assign reasons for its actions. This has become a recognized procedure in Oklahoma, and its necessity has been established. A., T. & S. F. R. Co. v. State, 47 Okla. 645, 150 P. 108. The commission made no findings as to Community in Order No. 6201, and in the present order adopts the findings of No. 6201 as applicable to Community. Obviously, since they relate almost entirely to Lone Star,

they cannot be pertinent to Community's rate base, except in an incidental manner.

The orders of the commission: (1) Transforming the temporary rate into a permanent rate is vacated; (2) dismissing the applications for a reduction of rate, and striking Community's application for an increase in rates and docketing it as another cause, is vacated; and (3) rendering judgment against Community for $168,901.14, with interest, is vacated. Since these orders were erroneous, the status of the cause is unchanged, and the commission is directed to proceed with the hearing on the various applications and to establish a permanent rate for Community.

PHELPS, CORN, and GIBSON, JJ., concur. OSBORN, C. J., concurs in conclusion, but dissents in part. HURST and DAVISON, JJ., concur in result. RILEY and WELCH, JJ., dissent.

OSBORN, C. J. (dissenting in part, but concurring in conclusion). On July 10, 1934, this court handed down an opinion relating to a companion order in this rate-making proceeding. Lone Star Gas Co. v. Corp. Com., 170 Okla. 292, 39 P.2d 547. At that time I filed a dissenting opinion in which I pointed out the fatal defect of said proceeding in the jurisdiction of the commission to make a valid rate order. It would serve no useful purpose to reiterate the matters discussed therein.

However, the power of the Corporation Commission to fix the rates of public utilities is found in the applicable provisions of the Constitution and statutes enacted pursuant thereto. By section 22 of article 9 of the Constitution it is provided that the Corporation Commission shall take evidence and shall make a finding of facts predicated thereon, which finding of facts must justify the legislative order fixing the rates so made. This finding, as declared by the Constitution, is to be taken by this court as "prima facie just, reasonable and correct." At the time of the previous order no such finding of facts had been made as to the Community Natural Gas Company. At the time of the making of the order on appeal here, the Corporation Commission made no such finding of facts, nor had it theretofore made any such finding of facts as to the Community Natural Gas Company, the company affected by the order. In the absence of such finding of facts, the Corporation Commission was wholly without authority or jurisdiction, legislatively, to fix such rate, and to sustain such order of the Corporation Commission would be clearly and manifestly erroneous.

We have many times said that the Corporation Commission must act strictly in conformity to the provisions of the Constitution, and unless it does so its action is clearly erroneous. No power exists in this court to waive such constitutional requirement. The people have a right to expect the Corporation Commission to so act, and it is most unfortunate that relief to the people can be delayed or thwarted by a failure to follow the plain, simple, mandatory requirements of the Constitution.

I concur in the conclusion of the majority opinion, but dissent as to much of the reasoning contained in said opinion.