## SOUTHWESTERN BELL TELEPHONE CO. v. STATE.

No. 29738.   Feb. 12, 1942.

Dissenting Opinion Feb. 24, 1942.

Ordered by the Court to be published

Sept. 20, 1944.

*151 P. 2d 929.*

Roger H. Savage, of Tulsa, E. W. Caulsen, of St. Louis, Mo., and John H. Cantrell and Joe A. McCloud, both of Oklahoma City, for S. W. Bell Tel. Co.

L. V. Reid, Gen. Counsel State Corp. Com., and S. J. Gordon and Ed White, all of Oklahoma City, and Randell S. Cobb, Atty. Gen., for Corporation Commission.

PER CURIAM.   This matter coming on for hearing upon motion of the appellant and plaintiff in error to determine the status and character of this cause and upon the response filed thereto by the appellees and defendants in error, and the court having considered the motion and the said response and the briefs and the arguments of counsel.

It is determined that the above styled and numbered cause is a legislative appeal from a legislative order of the Corporation Commission of the State of Oklahoma, and

It is ordered that further consideration of said numbered cause be in the nature of a legislative review of said proceeding.

WELCH, C.J., and RILEY, J., dissent.

---

RILEY, J. (dissenting).  Pursuant to provisions of section 20, art. 9, Constitution of Oklahoma, the Southwestern Bell Telephone Company, on March 11, 1940, lodged an appeal in this court for a review of an order of the Corporation Commission of Oklahoma fixing state-wide telephone rates. Supersedeas bond was by this court denied; whereupon appellant sought an injunction as against the rate made in the United States District Court for the Western District of Oklahoma and temporary injunctions were granted, but the federal court continued that cause pending determination of processes within the jurisdiction of the state.

On April 28, 1941, Senate Bill No. 61 (S. L. Okla. 1941, p. 544) became effective.  That act is a constitutional amendment and seeks to recall a rule of law, existing under the judicial construction of the terms of sections 20 and 23, art. 9, Constitution, as to the character of appeals that exist in causes such as the one at bar.  Thereafter, appellant filed in this appealed cause a motion "To Determine Status and Character of Cause," and on February 12, 1942, this court promulgated its order declaring this action to be "in the nature of a legislative review."

The magnitude of the decision is readily obvious.  This is a matter highly publici juris.  Not only is an act of the dignity of a constitutional amendment nullified insofar as its retroactive effect is concerned ("the provisions of this act shall apply to all appeals from orders of the Corporation Commission now pending in the Supreme Court . . . "(sec. 7 of the act, supra), but doubt arises as to the efficacy of remaining provisions of the act forming a portion of the highest of mandates by which all state governmental agencies are bound.

The determination made not only effects a rate to be paid by each patron of a telephone service within the State of Oklahoma, just, reasonable and correct under constitutional mandate (article 9, sec. 22, Constitution of Oklahoma), but also a rate of such attribute by reason of the legal presumption indulged that officers do their duty. Atchison, T. & S. F. R. Co. v. State, 28 Okla. 476, 114 P. 721.  As opposed to this presumption, appellant's contention is that the rate made is confiscatory and in violation of state and federal constitutional provisions to the effect that private property shall not be taken for public use without just compensation. The burden or onus in such cases is upon the appellant.  Missouri, K. & T.

Ry. Co. v. State, 24 Okla. 331, 103 P. 613. A rate that would not be so confiscatory, upon the one hand, and a rate that would not take any proportion of patrons' money without service, on the other, was the issue that was before the commission nisi prius.

As stated in Oklahoma Cotton Ginners' Ass'n v. State, 174 Okla. 243, 51 P. 2d 327, section 19, art. 9, Constitution of Oklahoma, specifically provides that affected companies shall be proceeded against by due process of law before the commission sitting as a court and shall be afforded opportunity to introduce evidence to be heard "against the validity, justice, or reasonableness of the order," thus evidencing a judicial issue, originally. And while, as the great Holmes thought and said over the protest of Chief Justice Fuller and Mr. Justice Harlan (Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S. Ct. 67, 53 L. Ed. 150) that the function below was solely legislative in that it "looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power," whereas the judicial inquiry "declares and enforces liabilities as they stand on present or past facts and under law supposed already to exist," that distinction cannot be logically made, for each governmental act constitutes a precedent by which is measured rights as well in future as in the past. And this is evidenced by the rule of law now considered arising by judicial interpretation of constitutional provisions.

Chief Justice Fuller was convinced that the Corporation Commission of Virginia (like ours) "was made primarily a judicial court of record of limited jurisdiction, possessing also certain special legislative and executive powers." And that all requisites of a judicial determination were afforded in the case under consideration — that a "palpably dangerous tendency" existed under the rule of law designating the appellate procedure legislative in character, for the "power grows by what it feeds on." Thus, by so holding, a cor-

poration may appeal to the Supreme Court and if by decision there it prevails, the people's rights are finally determined, but if, on the other hand, the order fixing rates prevails, the corporation is not bound in any sense, but begins anew federal determination unhampered by any judicial construction of rights. That is manifestly an unjust rule of law.

Mr. Justice Harlan was firm in declaration that the "Virginia State Corporation Commission is, in every substantial sense, a court," rendering unauthorized interposition of the lower federal courts, but subjecting the right of appellant under the state judicial processes to adequate protection by appeal under due process provisions of the Federal Constitution. Suffice it to say that the decision in that case remanded the cause to await final proceedings within the state. A requirement of exhaustion of remedies afforded by the state was all that was necessary to the determination of that case.

The rule of law existing and held applicable to a review by this court of an order establishing rates for a public utility such as a transmission and transportation corporation, doing business within the State of Oklahoma, was first stated in Pioneer Telephone & Telegraph Co. v. State, 40 Okla. 417, 138 P. 1033, in these words:

"The Supreme Court of this state, when exercising the authority granted it by said provision of said section 20, sits in a legislative or administrative capacity."

Nevertheless, the utterance then made did not become a rule of law within this jurisdiction. It was obiter dictum.

The cause under consideration was not for rebate and reparation ordered by the commission under a power conferred by constitutional amendment and in no wise did it concern an appeal under a rate made. The process was injunctive.

Nowhere in the opinion was such a rule of law stated in the syllabus as required by law (12 Okla. Stat. Ann.

§ 977), whereas in decision early (McDonald v. Stiles, 7 Okla. 327, 54 P. 487) and late (Corbin v. Wilkinson, 175 Okla. 247, 52 P. 2d 45) the rule has been that expression in opinion by way of reasoning not reflected in the syllabus is not a rule of law.

No act of the Legislature is effective unless limited to one subject which shall be clearly expressed in its title (section 57, art. 5, Constitution of Oklahoma), and the same reasons exist for the statutory requirement that the law as construed by the Supreme Court shall be stated in a syllabus.

The first expressions are, as Jefferson said, the "crude essays of our first and inexperienced, although wise, virtuous and well-meaning councils," and we should not, as he admonished, "look" upon them "with sanctimonious reverence, and deem them like the Ark of the Covenant, too sacred to be touched" nor "ascribed to the men of the preceding age a wisdom more than human, and suppose what they did to be beyond amendment." "Institutions must advance also and keep pace with the times. We might as well require a man to wear still the coat which fitted him when a boy, as civilized society to remain ever under the regimen of the barbarous ancestors. It is this preposterous idea which has lately deluged Europe in blood,. Their monarchs, instead of wisely yielding to the gradual change in circumstances, of favoring progressive accommodation to progressive improvements, have clung to old abuses, entrenched themselves behind steady habits and obliged their subjects to seek, through blood and violence, rash and ruinous innovations which had they been referred to peaceful deliberations and collected wisdom of the nation would have been put into acceptable and salutary forms."

Just so, in more refined revolutions adapted to our country, these corporations exercising monopolistic crown rights under a franchise granted by the sovereign have been subject to collective competition and the citizen has paid for duplication of service and experimentation, to some extent because of failure to re-examine fundamentals of government and agree upon just rules of law for their government.

In Oklahoma Cotton Ginners' Ass'n et al. v. State et al., supra, we held that on appeal from an order of the Corporation Commission fixing rates for ginners, this court "will judicially, but not legislatively, review the action of the commission" despite the fact that the act, amendatory of Constitution as provided in section 35, art. 9, Constitution of Oklahoma, prescribed that such an appeal would be in the same manner, form, and under the same procedure as pertained to such rate orders made relative to transportation and transmission companies.

It was not then appropriate to determine, contrary to the obiter dictum aforesaid, that all such appeals were necessarily judicial in their nature, and that the positive provisions of section 1, art. 4, Constitution, governed all such cases.

"The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

While section 20, art. 9, Constitution of Oklahoma provides for appeal from any action of the commission prescribing rates, it is the manner in which such appeals may be taken that is designated and not the nature of the cause on appeal.

Neither in section 35, Id., nor elsewhere is the Legislature vested with authority to amend constitutional provision so as to change or designate the character of labor performed by this court. That matter is fixed by the Constitution itself. However, in state and federal court construction of constitutional provisions governing the charac-

ter of such appeals, section 34 of art. 9, Constitution of Oklahoma, is entitled to consideration.

"The provisions of this article shall always be so restricted in their application as not to conflict with any of the provisions of the Constitution of the United States, and as if the necessary limitations upon their interpretation had been herein expressed in each case."

One of the provisions of the Constitution of the United States contained in section 4, art. 4, reads:

"The United States shall guarantee to every State in this Union a Republican Form of Government. . . ."

Essentials of a government republican in form are the maintenance of three separate and distinct departments: Legislative, executive and judicial; whereas to the extent that a judicial forum is not provided for the determination of rights and issues arising under rate-making authority pro tanto, a republican form of government is by judgment and decree denied the people of this state.

In Community Natural Gas Co. v. Corporation Commission of Oklahoma, 182 Okla. 137, 76 P. 2d 393, the dictum heretofore considered was stated in the syllabus of the case. It then became a rule of law, but no such rule was effective in City of Poteau v. American Indian Oil & Gas Co., 159 Okla. 240, 304, 18 P. 2d 523, so strongly relied upon in the cited case, nor in other cases cited.

By our partial abdication, as I view it, in failure to declare judicial this important function of state government, resort may be made from rate orders of the commission, confirmed on appeal, theoretically but not practically, to inferior state courts, where injunctive processes may be afforded under constitutional construction stated in the original case (Pioneer T. & T. Co. v. State, supra). But by virtue of section 2, art. 7, Constitution, this court exercises a superintending control over such courts; moreover, by virtue of the same provision, a like appellate jurisdiction extends, so that originally and finally under such procedure this court would be in the ridiculous and anomalous situation of assuming to correct its own legislative oversteps. Consequently, as in the case at bar, exercise of original jurisdiction by injunctive process is usually sought in the lower federal courts and our labors, in such cases under the existing rule, are "labors of love," not decisive of the people's rights unless against them, but merely legislative in character, a specie of veto such as that exercised by one of the houses of a bicameral system in the legislative department of government.

That rule is erroneous, ill-advised, and destructive of needs of the people; it is burdensome to federal courts, and remonstrances have been uttered against it by federal act, under which Congress has restricted jurisdiction of courts created by it and by the Legislature as shown by the act herein cited. The rule of law should be recalled; it should be recalled by the judiciary.

Said Mr. Lincoln, in discussing the Dred Scott decision:

"Somebody has to reverse that decision and we mean to reverse it. If the policy of the government upon vital questions affecting the whole people is to be irrevocably fixed by decision of the Supreme Court . . . the people will cease to be their own rulers, having to that extent practically resigned their government into hands of that eminent tribunal."

The corporate interests in finality are the people—that interest is entitled to a just rule and no more. It will be satisfied that with which it ought to be satisfied, and the people who are patrons of that corporate interest are entitled to rights, one of which is a judicial forum of state government in which, under due process of law, a final decision in their favor may be rendered.

The right to make law is usually exclusive and monopolistic. "Law, instead of acting as a dam, must become the helpful canal through which functional co-ordination of states can be achieved." Law Without Force, Niemeyer, p. 24.

It is urged that the legislative act, supra, cannot bestow or restore the judicial function to this court in this case by reason of section 54, art. 5, Constitution of Oklahoma:

"The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute."

But in decision of that contention sight must not be lost of the fact that the act is in fact a constitutional amendment, being so by permissive provision of the Constitution, and as such there is no simple repeal of a statute as contemplated by the inhibition contained in section 54, art. 5, supra. Russell v. Walker, 160 Okla. 145, 15 P. 2d 114. In Ensley v. State, 4 Okla. Cr. 49, 109 P. 250, it was held that:

"Section 54, art. 5, of the Constitution of Oklahoma, providing that the repeal of a statute shall not 'affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute,' has no reference to changes in the law of procedure merely."

Vol. 6 R.C.L. 296, 359, 363; 1 C.J. 988; 49 L.R.A. 272; and in Shelby-Downard Asphalt Co. v. Enyart, 67 Okla. 237, 170 P. 708, this court held:

"No one has a vested right in any particular mode of procedure for the enforcement or defense of his rights."

Dwyer et al. v. Volmar Trucking Corporation, 105 N.J. Law, 518, 146 Atl. 685; State et al. v. Continental Casualty Co. of Hammond, Ind., 205 Iowa, 1154, 213 N.W. 517.

For these reasons, I would adjudge the functions of the Supreme Court of Oklahoma to be solely judicial in all classes of cases.