Application of VALLIANT TELEPHONE COMPANY for Adjustment of Rates and Charges for Telephone Service in the Valliant, Oklahoma, Exchange.

VALLIANT TELEPHONE COMPANY, Appellant,

v.

CORPORATION COMMISSION OF OKLAHOMA; Hamp Baker, Chairman; Bill Dawson, Vice-Chairman; and Norma Eagleton, Commissioner, Appellee.

No. 53751.

Supreme Court of Oklahoma.

Dec. 21, 1982.

Charles Nesbitt, Oklahoma City, for appellant.

Julia T. Brown, Asst. Gen. Counsel, Oklahoma Corp. Com'n, Oklahoma City, for appellee.

SIMMS, Justice:

Valliant Telephone Company appeals from an order of the Oklahoma Corporation Commission [hereafter Commission] reducing telephone rates. Appellant originally filed an Application before the Commission for an increase in rates for telephone service to its customers by $1.50 per month because of net operating losses. After a hearing, the Commission's Referee filed a report recommending that rates be reduced. Valliant Telephone Company [hereafter Valliant] filed exceptions, which were heard by the Commission en banc, along with Valliant's motion to remand the cause for further hearing. The Commission denied all exceptions and motions and issued Order No. 152611, adopting the Referee's report.

Appellant asks that the Commission's order be vacated and set aside and the cause remanded to grant the rate increase requested or, in the alternative, to grant a new and additional hearing.

Although appellant lists numerous assignments of error, Valliant's primary contentions can be summarized as follows:

(1) That the order is not supported by substantial evidence and is contrary to the evidence presented at the hearing;

(2) That the allowable rate of return is confiscatory;

(3) That the order failed to utilize and apply standard rate-making principles.

Article IX, § 20, of the Oklahoma Constitution provides that in a case not involving a constitutional issue[1] the Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only and "shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence." See, *Oklahoma Hardware Co. v. Corporation Commission,* Okl., 405 P.2d 87 (1965); *Application of Southwestern Bell Tel. Co.,* Okl., 575 P.2d 624 (1978).

The standard definition of substantial evidence was reiterated in *Central Oklahoma Freight Lines v. Corp. Commission,* Okl., 484 P.2d 877 (1971):

"The term 'substantial evidence' means something more than a scintilla of evidence and means evidence that possesses something of substance and of relevant consequence such as carries with it fitness to induce conviction, and is such evidence that reasonable men may fairly differ as to whether it establishes a case."

In early cases we held that the determination of whether substantial evidence exists to support a Corporation Commission order does not require that evidence be weighed, only that there be evidence tending to support the order. See, *Pannell v. Farmer's Union Corp. Ass'n.,* 192 Okl. 652, 138 P.2d 817 (1943). Recently in *El Paso Natural Gas v. Corporation Commission,* Okl., 640 P.2d 1336 (1981), however, we adopted the definition of the United States Supreme Court that "the substantiality of evidence must take into account whatever in the record fairly detracts from its weight."[2] Therefore, in the instant case we have reviewed the whole of the evidence.

■ The rationale behind the substantial evidence standard on appellate review is that the fixing of rate schedules for public utilities is a legislative process. A rate order is a legislative enactment, not a judgment of a court. *Wiley v. Oklahoma Natural Gas Co.,* Okl., 429 P.2d 957 (1967). The responsibility for rate fixing is placed with the Corporation Commission and unless its action is clearly shown to be confiscatory, our Court will not interfere. The burden of showing a rate order amounts to confiscation is on the party challenging it. *Lindheimer v. Illinois Bell Tel. Co.,* 292 U.S. 151, 54 S.Ct. 658, 78 L.Ed. 1182 (1934).

■ A public utility is entitled to earn a reasonable return on its investment; at the same time, the Commission has the duty to insure the public adequate service at reasonable rates without discrimination. The Commission has the power to prevent a utility from passing on to rate payers unreasonable costs for materials and services by disallowing expenditures.

At issue are the following items:

■ (1) DEPRECIATION. Appellant's major concern over depreciation rates was that the referee used unidentified bulletins or documents in setting them. Appellant attempts to liken this to the situation in *Ohio Bell Tel. Co. v. Public Utilities Commission of Ohio,* 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937):

"From the standpoint of due process—the protection of the individual against arbitrary action—a deeper vice is this, that even now we do not know the particular or evidential facts of which the Commission took judicial notice and on which it rested its conclusion. Not only are the facts unknown; there is no way to find

---

1. The appellant does not raise an issue of constitutional dimension which would require a different kind of appellate review under article IX, § 20.

2. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

them out. When price lists or trade journals or even government reports are put in evidence upon a trial, the party against whom they are offered may see the evidence or hear it and parry its effect. Even if they are copied in the findings without preliminary proof, there is at least an opportunity in connection with a judicial review of the decision to challenge the deductions made from them. The opportunity is excluded here. The Commission, withholding from the record the evidential facts that it has gathered here and there, contents itself with saying that in gathering them it went to journals and tax lists, as if a judge were to tell us, 'I looked at the statistics in the Library of Congress, and they teach me thus and so.' This will never do if hearings and appeals are to be more than empty forms." 301 U.S., at 302–303, 57 S.Ct. at 729–730.

We cannot agree with appellant's contention that an analogous situation is before us here. In *Ohio Bell,* the court's concern was primarily that the information relied on was *secret.* In the instant case, the REA approved depreciation rates[3] were employed by and recognized by both parties— clearly the party against whom they were offered had an opportunity to parry their effect. In fact, Valliant convinced the referee that the Commission's staff had incorrectly applied the depreciation rates. In short, there was ample testimony regarding the REA approved depreciation rates from both Valliant and the Commission which would allow the referee to determine an appropriate rate.

■ (2) SALARIES OF RELATIVES. The Commission staff made adjustments, adopted by the referee, which disallowed certain salaries or portions thereof as necessary business expenses. Valliant argues that this disallowance was a punitive measure by the Commission and that the only ground for disallowance was that the persons involved were relatives of officers. (Eight employees out of a staff of 15–18 were related)

We find that there was more than substantial evidence that salaries to several family members should have been disallowed as a necessary business expense. For example, Mrs. Dorries, the spouse of the president of Valliant, was simultaneously collecting salary as a full time employee/officer of Miller Telephone Company in Missouri, as a full time officer/employee of Valliant Antenna Television Company, and as a full time employee/officer of Valliant Telephone Company. The record shows that the salaries disallowed, of which the above is an example, were not justified as necessary and reasonable for the successful operation of the company. Valliant failed to meet its burden of showing these salaries were necessary and proper business expenses for rate-making purposes.

■ (3) GASOLINE CHARGES AND UNSUPPORTED EXPENSES. The Commission presented substantial evidence that expenses for gasoline should be allowed in the amount of $5,423.05. Staff calculated those charges it considered reasonable by allowing charges by employees and officers within a thirty mile radius of appellant's service area.

The staff auditor also disallowed for rate-making purposes a total of $19,976 of unsupported expenses. Appellant claims surprise and that documentary support could have been provided if fair warning had been given. The evidence is in conflict on this score; still the record indicates substantial evidence that many expenses were questioned by the state auditor and that the expenses were not business expenses. Moreover, appellant was given an opportunity at the hearing to file a sworn affidavit providing supporting documentation and declined to do so.

■ (4) ADJUSTMENT IN TOLL REVENUE, RATE BASE & RATE OF RETURN. Under Valliant's agreement with the Bell System, it is paid for its contribu-

---

**3.** The Rural Electrification Authority (REA) is the agency from which rural telephone companies and rural electric cooperatives obtain the majority of their capital. It issues reports and a schedule of depreciation rates, together with the acceptable range of said rates.

tion to toll service on a cost settlement basis. Under this plan, each item of actual physical plant and business expense is allocated partly to toll service and partly to local service. Each year Bell reimburses Valliant its actual expenses allocated to toll service and pays it a sum representing Bell's current rate of return on the net amount of telephone plant allocated to toll service. The record indicates that staff auditor accepted appellant's figure for toll revenue.

Appellant claims, however, that "the most basic principles of ratemaking require that toll revenues be adjusted when pro forma adjustments are made in operating expenses." While neither party offered much assistance to the Court in reviewing the question of adjustment in toll revenue, appellant failed to offer any authority for his position other than the testimony of his clients accountant. We note that as *a whole* the Corporation Commission's methods were fair and equitable. See, *Federal Power Commission v. Natural Gas Pipeline Co.,* 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037 (1951); *Southwestern Bell Tel. Co. v. State,* Okl., 204 Okl. 225, 230 P.2d 260 (1951).

 The Corporation Commission is not limited to any particular theory or method in fixing rates and, needless to say, the establishment of a rate is not a matter of exact science or capable of precise mathematical calculation. *Community Natural Gas. Co. v. Corporation Commission,* Okl., 182 Okl. 137, 76 P.2d 393 (1938).

Finally, appellant argues that the referee's calculations of rate base and rate of return ignored rate-making principles and were the result of a pre-conceived intent to arrive at a rate reduction. In actuality, the referee used the basic method of the applicant, simply making adjustments when certain expenses were disallowed or when referee disagreed with the labeling of particular expenses. Despite the fact that many issues were vigorously contested in the record, the record contains substantial evidence for the referee's order.

Relying on argumentation rather than citation of authority, appellant has failed his burden of showing that the rate-making methodology was other than fair and reasonable. Simply because Valliant's accountant employed another method of making pro-forma adjustments to actual operating figures for the test year does not mean that the Commission's method is erroneous. The Commission's order does not become suspect because it is challenged; it is the product of expert judgment and carries with it a presumption of validity.

Order No. 152611 is AFFIRMED.

IRWIN, C.J., BARNES, V.C.J., and HODGES, LAVENDER, HARGRAVE, and WILSON, JJ., concur.

DOOLIN, J., concurs in part, dissents in part.

OPALA, J., concurs in part, dissents to Part 4.