**SOUTHWESTERN BELL TELEPHONE CO., Appellant,**

v.

**The STATE of Oklahoma, and the Oklahoma Corporation Commission, Appellees.**

**MCI TELECOMMUNICATIONS CORP., Appellant,**

v.

**The STATE of Oklahoma, and the Oklahoma Corporation Commission, Appellees.**

**Nos. 73136, w/73137.**

Supreme Court of Oklahoma.

Jan. 21, 1992.

---

Nancy L. Coats, Oklahoma City, for appellant, Southwestern Bell Co.

Ronald E. Stakem, Clark, Stakem, Pherigo & Douglas, Oklahoma City, for appellant, MCI Telecommunications Corp.

Robert D. Allen, Hartzog Conger Cason & Hargis, Oklahoma City, for cross-appellant, AT & T Communications.

Michael L. Ball, Donald A. Low, and Helen Hall, Kansas City, Mo., and Nancy Thompson, Oklahoma City, for intervenor US Sprint.

Lindil C. Fowler, Jr., Leslie Wilson Pepper, and Maribeth D. Snapp, Oklahoma Corp. Com'n, Oklahoma City, for the Oklahoma Corp. Com'n.

ALMA WILSON, Justice:

After the Bell System was dissolved by consent decree and the U.S. District Court for the District of Columbia entered a "modified final judgment" [1] the local Bell operating companies retained all intra-LATA 800 Service traffic and AT & T retained all interLATA traffic. [2] Bell was obligated to provide 800 Access Service to all carriers on the same basis as it had provided to AT & T. Under the 800 Access Service plan, a carrier may offer 800 Service under either of two options. If the carrier enters into a joint service arrangement with the local exchange company, the

---

1. *United States v. American Tel. & Tel. Co.*, 552 F.Supp. 131 (D.C.C.1982), aff'd 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983).

2. When the federal courts ordered the break up of the Bell System in 1982, the nation was divided into "Local Access and Transport Areas" (LATAs). The judgment reorganized AT & T, divested its regional Bell operating telephone companies, and limited the Bell operating telephone companies to providing long distance toll service within a LATA. Oklahoma consists of two major LATAs which approximate the 918 and 405 area code boundaries. Telephone service between LATAs could be provided only by interexchange carriers such as MCI, U.S. Sprint, or AT & T Communications of the Southwest.

carrier transports and bills the interLATA portion of the 800 Service traffic, and the local exchange company transports and bills the intraLATA portion of the traffic. If the carrier enters into a non-joint service arrangement with the local exchange company, the carrier transports and bills all of the traffic and pays the local exchange company a revenue replacement rate, instead of normal access charges, for all intraLATA 800 Service access minutes transported by the carrier. This revenue replacement rate is designed to approximate the revenue the local exchange company would have received had it exclusively carried and billed the intraLATA portion of the 800 Service. The rate for non-joint 800 Service that the interexchange carriers would pay the local exchange companies is the issue in this appeal.

On October 8, 1986, Southwestern Bell Telephone Company (SWB) applied to the Oklahoma Corporation Commission (Commission) requesting changes and additions to its Access Service Tariff and its Wide Area Telecommunications Service (WATS) Plan Tariff for the purpose of adding 800 access that would allow interexchange carriers other than AT & T Communications of the Southwest, Inc., (AT & T) to offer 800 calling. At the hearing the Commission determined the parties, SWB, AT & T, MCI Telecommunications Corporation (MCI) and US Sprint, should try to reach an agreement about the disputed issues. All parties except AT & T signed a stipulation agreeing on an interim rate of $.276 per minute for the intraLATA 800 portion of the service. The stipulation requested that the Commission remand the cause for a final determination as soon as possible.

After the hearing the Commission prescribed the rate of $.192 per minute of use as the amount that interexchange carriers be charged by the local exchange carriers on non-joint intrastate intraLATA 800 calls. Additionally, the Commission ordered the local exchange companies to collect data

for review by the Commission in eighteen months. This review would provide the Commission with an opportunity to adjust the rate if needed. The Commission also ordered refunds of charges in excess of $.192 charged during the interim period along with interest. Both SWB and MCI filed petitions in error to appeal the order of the Commission. AT & T filed a petition in error as cross-appellant in the SWB case. The causes were consolidated for consideration by this Court.

The central issue in this case is whether the Commission's findings in setting the $.192 per minute rate were supported by substantial evidence. The appellants all argue that the rate is unlawful, SWB alleging that the rate is too low, and AT & T and MCI both alleging that the rate is too high. The related issues include whether or not the rate set results in the confiscation of property of SWB without due process of law, and whether the Commission lacks the authority to set rates using the "revenue replacement" theory of compensating the local exchange carriers for the intrastate intraLATA calls carried by the interexchange companies.

■ The standard of review for cases that do not involve a constitutional issue is well settled in this jurisdiction.[3] When a constitutional issue is not involved "review of appealable orders ... shall be judicial only and 'shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether findings and conclusions of the Commission are sustained by the law and substantial evidence.'" *Valliant Tel. Co. v. Corporation Comm'n,* 656 P.2d 273, 275 (Okla.1982).

## I. CONSTITUTIONAL ISSUES

The appellants all raise constitutional questions and urge this Court to exercise independent judgment regarding the law and the facts in this cause. The state

---

3. *Turpen v. Oklahoma Corp. Comm'n,* 769 P.2d 1309, 1317 (Okla.1988); *Valliant Tel. Co. v. Corporation Comm'n,* 656 P.2d 273 (Okla.1982); *Lone Star Gas Co. v. Corporation Comm'n,* 648 P.2d 36, 38 (Okla.1982); *State ex rel. Cartwright* *v. Oklahoma Natural Gas Co.,* 640 P.2d 1341, 1347 (Okla.1982); *Tecumseh Gas System, Inc. v. State,* 565 P.2d 356, 359 (Okla.1977); *Arkansas Louisiana Gas Co. v. City of Blackwell,* 558 P.2d 376, 377 (Okla.1976).

constitution provides for this Court to exercise such judgment in article 9, § 20, "[I]n all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts."

■ SWB argues that the Commission's method of calculating the $.192 rate is flawed in that it could lead to a rate of zero and result in confiscation of property without due process of law. This argument is without merit because the Commission did not set the rate at zero, it set the rate at $.192 cents per minute. A challenge to the method of calculation is appropriate in determining whether the Commission regularly pursued its authority and whether its findings were supported by the law and substantial evidence. The constitutional argument fails.

MCI asserts that the revenue replacement theory used to set the $.192 per minute rate is based upon the false assumption by the Commission that the local exchange companies have a right to have their revenue protected. MCI contends that such an assumption gives the local exchange companies a monopoly, which is a prohibited status under the constitution of this state.[4] MCI admits a limited exception is provided for public service companies, including telephone companies, the regulation of which has been delegated to the Commission under Okla.Const. art. 9, § 18, consistent with the provisions of 17 Okla.Stat. § 131 et seq. Because there is an exception to the prohibition of monopolies, the issue raised by MCI, like the issue raised by SWB, is best considered in determining if the Commission regularly pursued its authority and whether its findings are supported by the law and substantial evidence.

AT & T likewise cites Okla.Const. art. 9, § 18, alleging that the $.192 per minute rate is unfairly discriminatory and confiscatory as a matter of law. This cause involves the setting of a rate to be charged the interexchange carriers for the benefit of the local exchange carriers. Labelling the rate set as unfairly discriminatory and extortionate is not enough to change the review powers of this Court from one of judicial review to one of exercising independent judgment as to both the law and the facts.

None of the appellants have shown cause for this Court to abandon its role of judicial review by their assertions of violation of constitutional rights. Therefore, the review of the order of the Commission "shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence." Okla.Const. art. 9, § 20.

## II.  EVIDENTIARY ISSUES

■ SWB, AT & T and MCI maintain that the rate ordered by the Commission is contrary to law because it is not supported by substantial evidence. Substantial evidence has been defined by this court as "more than a scintilla of evidence." It is something of substance which can carry a conviction and which might cause reasonable men to differ in determination of whether it establishes a case. *Central Okla. Freight Lines, Inc. v. Corporation Comm'n*, 484 P.2d 877, 879 (Okla.1971). A determination of substantial evidence does not require this Court to weigh the evidence. *Teleco, Inc. v. Corporation Comm'n*, 653 P.2d 209, 212 (Okla.1982). The duty of this Court is to review the total record and determine whether the Commission's findings are supported by more than a "mere scintilla" of evidence. *Teleco*, 653 P.2d at 212. The Commission rulings must have adequate content so a reviewing court can determine whether there was substantial evidence in support of the decision. *Turpen v. Oklahoma Corp. Comm'n*, 769 P.2d 1309, 1333 (Okla.1988). Actions often adjudicated by the Commission and in which it has expertise carry with them a

---

**4.** "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, nor shall the law of primogeniture or entailments ever be in force in this State." Okla.Const., art. 2, § 32.

presumption of correctness. *Turpen*, 769 P.2d at 1317.

■ SWB, AT & T and MCI assert that the rate established by the Commission was not based on substantial evidence. The Commission argues that the entire record in this cause was considered in determining the appropriate rate. The Commission claims its decision was based on the weight of the evidence presented at the hearing, the testimony of the witnesses and the recommendations of the Hearing Officer.

To decide whether the Commission's order was supported by substantial evidence, this Court must determine whether the rate was reasonable and just. "Under the statutory standard of 'just and reasonable' it is the result reached not the method employed which is controlling." *Federal Power Comm'n v. Hope Nat'l Gas Co.*, 320 U.S. 591, 602, 64 S.Ct. 281, 287, 88 L.Ed. 333 (1943); *see also Southwestern Pub. Serv. Co. v. State*, 637 P.2d 92, 97 (Okla.1981).[5] This Court has held that a "public utility is entitled to a fair *opportunity* to earn a reasonable rate of return on its investment [emphasis added]." *Lone Star Gas Co. v. Corporation Comm'n*, 648 P.2d 36, 39 (Okla.1982).

> Rates which enable the company to operate successfully, to maintain its financial integrity, to attract capital, and to compensate its investors for the risks assumed certainly cannot be condemned as invalid, even though they might produce only a meager return on the so-called 'fair value' rate base.[6]

Through legislative enactment the Commission has the authority to order rates which allow a "fair return" on the value of property used in providing service to the citizens of Oklahoma.[7] A determination of the fair return on the value of property is a pre-requisite in determining whether a rate is reasonable and just. SWB argues that

38.312 cents is the average rate per minute which local exchange companies receive to carry intraLATA calls. Additionally, SWB explained how the rate of 27.6 cents per minute was developed.

The recommendations of the Commission expert that were adopted by the Commission were based upon the premise that the local exchange companies should have their revenues replaced according to the amount they would make if they offered the service instead of the interexchange carriers. In suggesting a rate to the Commission, the expert offered testimony concerning the impact that the non-joint 800 Service would have upon the intraLATA toll pool into which the revenues from the intraLATA 800 Services provided by the local exchange companies are pooled. Some customers of the local exchange companies could be expected to migrate from the service presently offered by the local exchange companies to the new services to be offered by the interexchange carriers. Additionally, the new services could be expected to attract new customers not currently participating in any 800 Service. The impact of the anticipated migration was the basis for the Commission staff's recommendation of the $.192 rate to fairly compensate the intraLATA toll pool for lost revenues. Because the migration could not be precisely determined, the Commission staff recommended a review in eighteen months.

In its order, the Commission found that the proposals of the staff properly balanced the interests of the local exchange companies, the interexchange carriers and the using public. The Commission noted that the local exchange companies proposed to capture the same revenue per minute from intraLATA 800 Service as they would have if they had carried the call. They would ignore the fact that the new services created by the interexchange

---

5. "It is not the theory but the impact of the rate order which counts. If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end." *Federal Power Commission v. Hope Natural Gas Co.*, 320 U.S. 591, 602, 64 S.Ct. 281, 288, 88 L.Ed. 333 (1943).

6. *Federal Power Comm'n*, 320 U.S. at 605, 64 S.Ct. at 289.

7. 17 O.S.1981, § 136.

carriers would attract new customers who had previously not used 800 Service. The interexchange carriers, according to the Commission order, would, by asking for intraLATA 800 Service at interLATA 800 prices, ignore the possibility that stimulation of intraLATA 800 revenues would not match the local exchange companies' intraLATA 800 revenues lost to migration thereby harming the toll pool. The Commission stated that if the intraLATA 800 Service price were too high, services desired by customers may not be offered, and the using public would be harmed. It further stated that if the price were too low and stimulation did not cover migration, the public could be harmed by a loss of revenues to the toll pool. Accordingly, the Commission adopted the rate suggested by the Commission staff of $.192 per minute.

A review of the record reveals substantial evidence to support the order of the Commission. The evidence by the appellants to support higher and lower rates was considered and rejected by the Commission. Accordingly, the order of the Commission is AFFIRMED.

LAVENDER, SIMMS, DOOLIN, HARGRAVE and SUMMERS, JJ., concur.

OPALA, C.J., and KAUGER, J., concur in result.

HODGES, V.C.J., disqualified.